**Grange Mut. Casualty Co.**
v.
**Thompson**
*[Cite as 8 AOA 503]*

*Case No. 89AP-604*
*Franklin County, (10th)*
*Decided November 20, 1990*

*Patrick F. Smith and Pamela B. Browning, Schottenstein, Zox & Dunn, L.P.A., for Appellee.*

*Dennis P. Levin, Levin & Levin, Co., L.P.A., James Barnhouse and Johanna Sfisco, Kitchen, Messner & Deery, for Duane C. Thompson.*

*James T. Murray, Murray & Murray Co., L.P.A., for Brenda Dickerson.*

STRAUSBAUGH, J.

This cause involves a declaratory judgment action commenced by plaintiff, Grange Mutual Casualty Co. ("Grange"), in the Franklin County Court of Common Pleas to determine its liability under a homeowners policy issued to defendant, Duane C. Thompson ("Thompson"). The defendants in this action were Thompson, the insured, and Brenda Dickerson, the executrix of the estate of Arthur Dickerson, Jr. ("Dickerson"), deceased.

On January 25, 1984, both Thompson and Dickerson were employees of National Engineering and Contracting Company ("National Engineering"), a place of business in Strongsville, Ohio. Testimony indicated that the two men had been very good friends for a number of years prior to this date.

On this particular day, Thompson and Dickerson became involved in an argument at work resulting from Thompson teasing Dickerson about a basketball game Dickerson had participated in the previous evening. After work that day, the two men began consuming alcoholic beverages at a free bar provided by National Engineering on company grounds. Thompson and Dickerson had been drinking approximately three hours when the argument between the two led to scuffling in the company building.

Before leaving for home that evening, Thompson, who was highly experienced with firearms, took a semi-automatic handgun from his briefcase, inserted a bullet clip, and placed the gun in the waistband of his pants. As Thompson began to walk toward the exit, the two men began scuffling again.

Eventually the two men, who often shared rides back and forth from work, both got into Thompson's car. Thompson had driven the car approximately a mile when he realized that he had left his glasses at work. Thompson proceeded to drive back to National Engineering. Thompson testified that Dickerson was slapping him in the car and cursing at him.

Upon arriving back at National Engineering, Thompson parked the car and began walking up the sidewalk to the back door of the company building. Dickerson got out of the car, ran up the sidewalk, and stood between Thompson and the door. Thompson testified that Dickerson threatened him, stating, "I am going to cut you." Thompson then pulled out his handgun and fired at Dickerson, hitting him at least four times with close range shots. Dickerson died at the scene of the shooting. A pocket knife, belonging to Thompson, was found in the right hand of Dickerson at the shooting site. Thompson testified that Dickerson had removed the knife from Thompson's office desk earlier that day.

At the time of the shooting, Thompson was insured by Grange pursuant to a policy of homeowners insurance, which provided Thompson with up to $300,000 in personal liability coverage. The policy provided in part that "[t]his policy does not apply *** to bodily injury or property damage which is either expected or intended from the standpoint of the insured."

On November 23, 1984, Brenda Dickerson filed a civil action for wrongful death in the Cuyahoga County Court of Common Pleas, naming as defendants National Engineering and Thompson. Brenda Dickerson's complaint alleged negligence on the part of defendants in causing the death of Dickerson. Grange proceeded to provide a defense for Thompson under reservation of rights.

According to facts alleged in oral argument and in the briefs before this court, Grange attempted to intervene in the civil action in Cuyahoga county in July 1988. A trial date in that proceeding had been set for November 28, 1988. Subsequently, in late October or early November, the Cuyahoga County Court of Common Pleas denied Grange's motion for leave to intervene. Grange then unsuccessfully appealed the trial court's denial of the motion to intervene.

On November 22, 1988, six days before the trial date of the wrongful death action in Cuyahoga county, Grange filed the instant declaratory judgment action in the Franklin County Court of Common Pleas. Grange's complaint for declaratory relief alleged that under the terms of the policy issued to Thompson, there was no coverage available to the insured for the wrongful death of Dickerson because such death was "expected or intended from the standpoint of the insured."

Subsequently, on November 28, 1988, the wrongful death action filed in Cuyahoga county proceeded to trial, resulting in a jury verdict in favor of Brenda Dickerson and against Thompson and National Engineering. By journal entry dated January 13, 1989, the Cuyahoga County Court of Common Pleas entered judgment against Thompson and National Engineering in the amount of $3,945,000 in compensatory damages. The court further entered judgment against National Engineering for punitive damages in the amount of $1,782,000, and against Thompson for punitive damages in the amount of $1,188,000. Grange has apparently appealed the judgment of the trial court to the Court of Appeals for Cuyahoga County.

On March 20, 1989, Brenda Dickerson filed a supplemental petition in the Cuyahoga County Court of Common Pleas naming as defendants Thompson and Grange. Brenda Dickerson's supplemental petition requested that Grange be joined in the action as a party defendant and that Grange be ordered to pay $300,000 toward damages previously awarded in the wrongful death action brought in the Cuyahoga County Court of Common Pleas.

On March 28, 1989, Grange and defendants, Brenda Dickerson and Thompson, tried the declaratory judgment action in the Franklin County Court of Common Pleas. By judgment entry filed on April 24, 1989, the trial court found in favor of Grange, holding in part that:

"*** There is no coverage for the injury and wrongful death claim asserted against defendant Thompson as the injuries and death were expected and intended, Plaintiff has no duty to indemnify defendant on the judgment against him for shooting Arthur Dickerson."

On appeal, defendants have set forth the following assignments of error for this court's review:

"I. The court erred in refusing to transfer this case to a county where it would be properly venued.

"II. The court erred in scheduling the trial for four months after the complaint was filed. This error was prejudicial to defendants.

"III. The court erred in ruling that the case should be tried before the court.

"IV. The court erred in using defendant Thompson's conviction for voluntary manslaughter as an admission that the death of Arthur Dickerson was 'expected or intended.'

"V. The court erred in construing the ambiguous language of the insurance policy against the insured.

"VI. The Franklin County Common Pleas Court erred in assuming jurisdiction over this matter because jurisdiction of Cuyahoga County Common Pleas and appeals courts had been invoked by Grange.

"VII. The court erred in not striking a certain letter written by Thompson's counsel.

"VIII. The court erred in not ruling that Grange is bound by factual findings made in Case No. 835866, *Dickerson v. Thompson* in Cuyahoga County.

"IX. The court erred in assuming jurisdiction when a supplementary petition was pending in the underlying tort case in Cuyahoga county."

Defendants, under their first assignment of error, assert that the trial court erred in finding that venue was proper in Franklin county and in refusing to transfer this case to a county where it would be properly venued. The issue of venue was raised prior to trial by a motion of defendant Brenda Dickerson, filed February 17, 1989, on the ground that venue in Franklin county was improper under Civ. R. 3(B).

Civ. R. 3(B) provides, in relevant part:

"*** Proper venue lies in any one or more of the following counties:

"***

"(3) A county in which the defendant conducted activity which gave rise to the claim for relief;

"***

"(6) The county in which all or a part of the claim for relief arose[.] ***"

The trial court, in ruling that venue was proper in Franklin county, stated in relevant part:

"The Court finds venue in Franklin County is proper as it is the county in which the subject insurance policy was issued, the county where the claim was made under the policy, the county where the claim file is maintained and where the claim is supervised.

"Venue in other counties would be proper as the policy was purchased by Mr. Thompson through his Erie County neighbor Gardner Insurance Agency in Sandusky. The claim arose in Cuyahoga County and plaintiff sought to intervene in the damage action in Common Pleas Court there prior to trial but was not permitted to do so. This action resulted. Venue in this court being proper under Civil Rule 3(B) (3) this court may not apply the doctrine of *forum non convenieus* to transfer the case."

The record indicates that, at the time of the shooting, both Thompson and Dickerson were residents of Erie county, Ohio. Thompson shot and killed Dickerson on the company grounds of National Engineering, located in Cuyahoga county, Ohio. Subsequent to the death of Dickerson, Brenda Dickerson was appointed executrix of his estate by the Erie County Court of Common Pleas. The civil action resulting from the shooting incident was initiated in the Cuyahoga County Court of Common Pleas.

Testimony was given at trial concerning the issuance of the insurance policy. The evidence indicates that Thompson purchased the insurance policy through a local independent insurance agency, Gardner Insurance Agency, located in Erie county. Thompson testified that the sole contact he had with anyone concerning tee policy was through the Gardner Insurance Agency, which was situated approximately one and one-half blocks from his house. Thompson gave the following testimony at trial:

"Q. *** With respect to your relationship with the insurance company, Mr. Thompson ***.

"Did you have any contact at all with Columbus, Ohio?

"A. No.

"Q. Did you *** receive coverage the day you went down to see Mr. Gardner?

"A. The way I remember it, I went down and saw Mr. Gardner. There was some girl there, too. And it seems like a check was given to them that day, and they said I've got coverage from then on.

"Q. Did you personally ever have any contact with Columbus at any time thereafter?

"A. No, not that I remember, no.

"Q. Do you have any recollection of even having specifically mailed a check to Columbus?

"A. No." (Tr. 430-431.)

Testimony at trial concerning the insurance policy was also given by Charles E. West, a representative of Grange. West testified as to the procedure involved when an application for insurance is procured through an independent agent and then submitted to Grange headquarters in Columbus, Ohio. West described how an application is reviewed by Grange's underwriting department to determine whether it will ultimately be approved. West gave the following testimony concerning the capability of an independent agent to bind a policy with an insured:

"[Q]. With respect to Grange, Mr. West, is it not your understanding that the agents who are authorized to sell your policies are authorized to bind the company when a customer walks in the door, at least on a temporary basis?

"A. Assuming that application meets minimum underwriting guidelines, Grange underwriting guidelines, which the agent would also have at his disposal, yes.

"Q. Is there any indication that *** when this risk was undertaken, there was some type of a question of risk that you would not be bound to meet?

"A. None to my knowledge.

"Q. If that's the case, it would be Gardner acting in a dual agent capacity that would have bound Grange at that moment in Sandusky, Ohio; is that correct?

"A. I honestly can't say if he'd be bound at that moment. I believe, yes, he would have bound him when the application was completed, but it would still have come through our underwriting department for ultimate approval. ***

"Q. So, the procedure in all likelihood, Mr. West, would have been whenever this policy was purchased, Mr. Gardner sitting in Sandusky, Ohio, would have bound the company the day Mr. Thompson walked in and gave them his check?

"A Yes. Well, I don't know--yeah. I don't know if he gave him a down payment, whatever.

"Q. That however they did it, down payment or the whole--you know, that is not important.

"At the time he went in and transacted his business with Gardner in Sandusky, Ohio, Gardner would have bound the policy; is that correct?

"A. Yes.

"Q. And, then, the next step would be an unbinding of the policy if Columbus upon reviewing what happened down there in Sandusky, Ohio, decided that it was a risk they didn't want to take?

"A. Yes.

"Q. And in this particular case, there was no such action to unbind the risk?

"A. No, it appears that the application was approved by our underwriting department." (Tr. 374-376.)

While the trial court apparently decided the question of venue based solely upon Civ. R. 3(B)(3), Grange asserts that venue was proper in Franklin county under either Civ. R. 3(B)(3) or 3(B)(6). It is the contention of Grange that the "claim for relief" in this action, as contemplated under Civ. R. 3(B), was Grange's claim for declaratory relief against defendants, i.e., Grange's claim that under the terms of the insurance policy, Grange was not obligated to indemnify Thompson for Dickerson's death. Thus Grange maintains that its claim for relief arose directly out of the insurance policy itself.

Defendants, on the other hand, argue that Grange's claim for relief did not arise out of Grange's issuance of the policy. Rather, defendants assert that Grange's claim for relief arose from the fact that Thompson shot Dickerson in Cuyahoga county.

Initially, before even addressing the issue as to what constitutes the "claim for relief" in this action, we determine, solely upon a factual basis, that the record before this court simply does not support a finding that defendants conducted activity in Franklin county. The unrebutted testimony of Thompson indicates that Thompson obtained the insurance policy from his local agent in Erie county. Grange's representative, West, testified that the local agent would have bound Grange to the coverage at the time Thompson made the first premium payment to his local agent. Thompson denied having any contact with persons in Columbus and the evidence fails to indicate otherwise.

The trial court's finding that Franklin county was the county where the claim was made under the policy is not supported by the record. To the contrary, Thompson testified that his claim was initiated by contacting his local agent. Regardless of Grange's assertion that it sent letters from Grange's Franklin county office advising Thompson that there

was no coverage for his conduct under the policy, such claim activity was solely the activity of the plaintiff to this action, not the defendants.

The trial court's finding, under Civ. R. 3(B)(3), that Franklin county was the county where the claim file was maintained is wholly irrelevant as to activity of defendants. Likewise, the trial court's finding that the claim was supervised in Franklin county solely speaks to the activity of the plaintiff. In sum, the trial court clearly erred in its factual findings concerning any possible activity conducted by defendants in Franklin county.

We note that as part of its claim that defendants engaged in activity in Franklin county under Civ. R. 3(B)(3), Grange argues that Thompson engaged in settlement negotiations in Franklin county regarding his demand for coverage, Based upon a review of the record, the apparent basis for Grange's contention concerns a copy of a letter attached to a Grange memorandum. The letter, signed by Thompson's attorney, Dennis P. Levin, is addressed to Grange's home office in Columbus and was apparently sent from Levin's office in Cleveland, Ohio.

Evidence as to the circumstances surrounding this letter is provided through an affidavit of Levin in which he states, in relevant part:

"The letter by me on November 21, 1988 *** was sent to the Columbus office upon the request of agents of the plaintiff insurance company and specifically upon the request of the attorney retained by plaintiff to represent the plaintiff's insured interest of Duane Thompson ***.

"Said letter is the only contact whatsoever with Franklin County, Ohio."

An affidavit was also submitted by James T. Murray, attorney for Brenda Dickerson, in which Murray states, in relevant part:

"All settlement negotiations and communications with Grange Mutual Insurance Company were made between Attorney Murray and Attorney Barnhouse, neither of whom is located in Franklin County. No business involved with the settlement negotiations was ever conducted in Franklin County."

Inasmuch as the sole evidence pertaining to negotiations conducted by defendants in Franklin county consists of a single letter mailed from Cuyahoga county to Franklin county, apparently at the request of Grange's Cuyahoga counsel (Barnhouse), we find Grange's argument concerning negotiation activity on the part of Thompson as a basis for venue in Franklin county to be without merit.

Nevertheless, and apart from the issue whether defendants conducted activity in Franklin county, Grange asserts that venue in Franklin county is proper under Civ. R. 3(B)(6) because it was the county in which all or a part of Grange's claim for relief arose. As noted above, Grange asserts that its claim for relief arose directly out of the insurance policy itself, while defendants contend that Grange's claim for relief arose from the shooting incident in Cuyahoga county. Presumably, under Grange's theory, if the claim for relief arose out of the policy itself, then the fact that the policy underwent administrative review at Grange's office in Franklin county and that the claim file was maintained in Columbus would give rise to venue in Franklin county under Civ. R. 3(B)(6).

Neither Grange nor defendants have cited any pertinent case law on this issue. Our independent research has revealed an Ohio appellate decision and an opinion from the Supreme Court of Kansas which we find helpful.

In *Nationwide Mutual Ins. Co. v. Armstrong Farm Products* (Aug. 9, 1985), Adams App. Nos. 414 and 419, unreported, Nationwide initiated a declaratory judgment action in Franklin county to determine its liability for damage to a building owned by the insured, defendant Armstrong Farm Products, Inc. The action was subsequently transferred to Adams county on motion of Armstrong and codefendant First State Bank of Adams County, which held a first mortgage on the property. Following a judgment in favor of Armstrong, Nationwide appealed, asserting various errors by the trial court including error in granting defendant's motion for a change of venue.

Nationwide asserted that Franklin county was a proper county for venue under Civ. R. 3(B)(6) as "*** the county in which all or part of the claim for relief arose *** [.]" *Id.* at 3. Nationwide advanced the argument that the "consummation" of the contract of insurance, which it claimed took place when Nationwide accepted Armstrong's application in

its home office in Franklin county, was a part of its claim for relief.

In *Nationwide,* the court noted that the relevant facts revealed that both Armstrong and the bank were residents of Adams county, that Armstrong purchased the insurance from a Nationwide agent in Adams county, and that the building in question was located in Adams county.

In addressing Nationwide's claim that venue in Franklin county was proper under Civ. R. 3(B)(6), the court held that:

"*** [T]he consummation of the policy in this case, which is uncontested, is an incidental and insubstantial factor far outweighed by the significant operative facts affecting its continued validity. Virtually all of the elements of Nationwide's complaint arose in Adams county, and venue elsewhere would be improper. The Franklin County Court of Common Pleas did not abuse its discretion in transferring the action to Adams County under Civ. R. 3(c) ***" *Id.*

In *Alliance Life Ins. Co. v. Ulysses Vol. Fire. Relief Assn.* (1974), 529 P. 2d 171, the insured was killed in an airplane crash which occurred in Grant county, Kansas. The insurer brought a declaratory judgment action to determine its liability under a $10,000 accidental death policy, naming as defendants the policy's assignee and its beneficiaries. The insurer brought the action in McPherson county, Kansas, the county of the insurer's home office and the place where the insured's application had been accepted. Under the Kansas venue statute, venue was proper in a county "in which the cause of action arose." *Id.* at 174. Apart from the fact that the insured's application had been accepted in McPherson county, the relevant facts indicated that: the defendant-assignee's office was located in Grant county; the insured had lived in Grant county and his family still resided there; and the airplane crash had occurred in Grant county.

Defendants moved to dismiss the action in McPherson county based upon improper venue. The trial court overruled defendants' motion, and following trial, entered judgment in favor of the insurer. Defendants subsequently appealed to the Kansas Supreme Court.

In *Alliance,* the Kansas Supreme Court initially observed that "*** the place of making a contract is irrelevant to the issue of where a cause of action arises for its breach; the controlling place is that of the breach[.] ***" *Id.* It was the insurer's contention, however, that the declaratory judgment action was not an action for a breach of the insurance contract (which it conceded would lie in Grant county), but rather merely an action to construe a contract. Thus the insurer argued that a cause of action to construe a contract arises where the contract is made.

The court rejected the insurer's contention, stating that:

"*** The declaratory judgment act is not designed to resolve academic disputes; there must be a case of 'actual controversy' involving the 'actual antagonistic assertion and denial of right.' ***. So long as Major, the insured, was alive the company had no cause of action' to construe the exclusionary clauses of its policy, because it had no 'controversy' with anyone. Whether any particular conduct on the part of the insured was or was not excluded was purely academic, and the courts would not have entertained an action to construe any of the policy's various exclusionary clauses. It was only when *** [the insured] met his death by accident that an actual controversy between the company and the beneficiaries under the policy came into being; it was then that a cause of action of any kind first 'arose.'" *Id.* at 174-175.

Hence the court observed "*** despite all its efforts to do so, the company cannot extricate its concern over the *meaning* of the policy from the issue of its *liability* under the policy. ***" *Id.* at 175.

We find the *Alliance* decision persuasive in our determination that under the facts of the present action, Franklin county is not a county in which all or part of the claim for relief arose. Any question as to whether Grange was obligated to indemnify Thompson under the language of the policy was nothing more than an abstract proposition until the shooting incident in Cuyahoga county. It was only following the death of Dickerson that a concrete and real controversy arose. Thus Grange's argument that the claim for relief arose merely out of the insurance policy itself is not well-taken.

Based on the foregoing, this court holds that venue is not proper under either Civ. R. (B)(3) or 3(B)(6) in Franklin county and the trial court should have sustained defendants' motion for change of venue.[1] Accordingly,

defendants' first assignment of error is sustained.

While proper venue for this action would lie in either Erie county or Cuyahoga county, we find, under the facts and circumstances of this case, that the most appropriate forum is Cuyahoga county, Accordingly, the judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded with instructions to sustain defendants' motion for change of venue and to transfer the cause to the Cuyahoga County Court of Common Pleas.

Based upon our disposition of the first assignment of error, we do not reach the determination whether or not the trial court erred under the remaining assignments of error. However, defendants' assignments of error numbers two, three, four, five, six, seven, eight, and nine are sustained to the extent that the trial court erred in proceeding with this action when venue did not lie in Franklin county.

*Judgment reversed and
cause remanded with instructions.*

REILLY, P.J., and KERN, J., concur.

KERN, J., retired, of the Montgomery County Court of Common Pleas, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

---

[1] Grange argues, in the alternative, that even if venue was improperly granted in Franklin county, this court must uphold the judgment of the trial court unless the trial court committed some other reversible error. Without deciding the issue whether the trial court did commit other reversible error, we reject Grange's contention. This court has previously reversed and remanded a cause with instructions to sustain defendant's motion for change of venue pursuant to Civ. R. 3 while overruling defendant's other assignments of error pertaining to the merits of the case. See *Wolery v. City of Portsmouth* (Dec. 13, 1984), Franklin App. No. 83AP-827, unreported (1984 Opinions 3193).