986 P.2d 1019

Tim CORDER, Sr., and Lavonne Corder, dba T & LC Farms, and Tim Corder, Jr., Plaintiffs–Respondents,

v.

IDAHO FARMWAY, INC., an Idaho corporation; and Dan Weitz, Defendants–Appellants.

No. 24484.

Court of Appeals of Idaho.

July 16, 1999.

Rehearing Denied Sept. 29, 1999.

Vernon K. Smith, Jr., Boise, for appellants.

Thompson and Ashcraft, L.L.P., Mountain Home, for respondents. Larry C. Ashcraft argued.

PERRY, Chief Judge.

Dan Weitz and Idaho Farmway, Inc., appeal from the district court's judgment, following a bench trial, finding Idaho Farmway liable to Tim Corder and LaVonne Corder, d/b/a T & LC Farms (collectively "Corder"), for breach of contract and both Weitz and

Idaho Farmway liable for filing a false labor lien. The district court awarded Corder $10,875.51 on the breach of contract claim and $28,699.97 on the false labor lien claim. In addition, the district court awarded Corder $37,980.22 for costs and attorney fees. For the reasons stated below, we affirm.

## I.

## PROCEDURE AND FACTS

Corder filed suit on November 15, 1995, claiming that Idaho Farmway breached their agreement to lease farm ground, was unjustly enriched by Corder's work on the property, and that Weitz and Idaho Farmway filed a false labor lien. Weitz and Idaho Farmway made a special appearance challenging venue in Elmore County. The district court denied the motion challenging venue, finding that the cause of action arose in Elmore County. Weitz and Idaho Farmway filed an interlocutory appeal which was dismissed by the Idaho Supreme Court.

Corder filed a motion for partial summary judgment on the false labor lien claim. The district court granted the motion, awarding Corder damages and attorney fees. However, Corder requested that the district court amend its order because of other damages incurred and not included in the partial summary judgment decision. The district court ordered that the false labor lien issue be presented at trial and vacated its prior order awarding partial summary judgment.

A bench trial was held. Although the district court did not issue written findings of fact and conclusions of law, it orally pronounced the following extensive findings of fact.

Corder has been a farmer for approximately twenty-five years and began farming in the Mountain Home area in 1978. He has primarily been a sugar beet farmer, but has grown a number of different crops during these years. Corder typically farms about 1,500 acres, of which he owns about 500 acres and leases the rest.

At the time concerned in this action Weitz was acting as *de facto* president of Idaho Farmway, and as its agent. Weitz had man-aged Idaho Farmway, Inc. since approximately 1976, but stopped acting in that capacity in 1996 because of a restructuring of the corporation.

The property in dispute is 720 acres which was owned by Idaho Farmway and situated near Mountain Home in Elmore County. Corder and Weitz began discussing a lease agreement for the property in August 1994. The parties eventually reached an agreement to lease the property. Corder agreed, as lessee, to pay a base price of $71,500 a year for the lease, to be divided into two payments. The first payment was due in January 1995. Corder was also to pay for the cost of water assessments, electricity to lift the water from the wells, and property taxes. The lease term was five years. The 720 acres was irrigated land. Idaho Farmway was to provide wells, pumps and lines necessary to get water to the land. Weitz, as Idaho Farmway's agent, made specific representations to Corder that well number one would be repaired and that the pump would be put back in the well. In addition, if well number one provided an inadequate supply of water, Weitz agreed that well number two would be made serviceable. Weitz told Corder that well number one produced 2,700 gallons of water per minute and well number two produced 2,000 gallons of water per minute.

Handlines (sprinkler systems) were also necessary to irrigate the property. Weitz agreed Idaho Farmway would provide forty handlines for the property, with the parts necessary for the handlines to work properly. Corder agreed to provide the labor necessary to effectuate a conversion of the handlines from end risers to center risers.

Corder commenced his fall work in September 1994. Corder attempted to use well number one, but encountered aeration problems in the water. Weitz agreed that the pump in well number one needed to be repaired and contacted a corporation about doing the repairs. In continued conversations, Weitz assured Corder he would take care of the water problem. However, by May 1995 Weitz had not completed the repairs. Corder needed the water to avoid damage to his crops, so Corder hired the corporation Weitz

had previously contacted to make the necessary repairs to pump number one. The repairs cost $12,863.

Even with the repairs, the water from well number one was insufficient and well number two was needed. Weitz again failed to make the necessary repairs, so Corder hired a different corporation to repair the pump in well number two. Corder paid $16,946 for these services.

Although Weitz had promised Idaho Farmway would provide the necessary parts to convert the end line risers to center line risers, it failed to do so. Therefore, Corder purchased those parts in order to avoid damage to his crops. The parts cost $6,400.

Weitz and Idaho Farmway failed in their obligations in numerous other ways. They did not insure that the pump stations were operable, per the agreement. Corder was forced to hire an electrical company to make repairs to the pump stations and paid $3,321.41. Pump station number three also needed repairs, and Corder hired a second electrical company. These expenses totaled $674.76.

On May 23, 1995, Corder sent Weitz a letter notifying him that Corder intended to deduct his incurred expenses from the amounts due for rent. Corder had already made his first payment of $36,000, and owed $35,500 plus the obligation to pay for electricity and property taxes.[1] Weitz did not respond to Corder's letter. In addition, Weitz never made a demand for the additional payment.

Corder believed at this time that Weitz agreed to deduct the expenses incurred by Corder from the amount owed on the lease. Therefore, Corder began his preparations for the fall, which cost him $8,806.50.

On September 26, 1995, Weitz and Idaho Farmway filed a farm labor lien with the Secretary of State. The lien was filed against Corder's crops, specifically including sugar beets, potatoes and wheat. Weitz and Idaho Farmway filed this lien knowing that the claim was false. As a result of this farm labor lien, two companies to which Corder

sold crops issued joint payee checks to Idaho Farmway, Farm Credit Services and Corder, rather than just to Corder. The total sum of these checks was for $305,736.11. Weitz, acting on behalf of Idaho Farmway, refused to release its claim to the funds, resulting in additional damages to Corder. Corder suffered from an increase in the interest on his farm operating loan in the amount of $14,-042.97. Corder was also forced to pay additional self-employment taxes for the year 1996 in the amount of $14,657 due to the lien which delayed Corder's receipt of farm income from 1995 to 1996. Corder would not have incurred these additional costs but for the false labor lien filing.

As a result of these findings of fact, the district court determined that Idaho Farmway breached the lease agreement between the parties and held it liable for $10,875.71. The district court further held Weitz and Idaho Farmway liable on the false labor lien claim and awarded Corder $28,699.97 in damages. In addition, the district court awarded Corder attorney fees and costs in the amount of $37,980.22. Weitz and Idaho Farmway appealed.

## II.

## DISCUSSION

### A. VENUE

Weitz and Idaho Farmway contend this case should not have been filed in Elmore County, but rather, in Canyon County. They assert that this action is "transitory" and, therefore, can only be filed in the county where the defendant corporation has its principal place of business.

Corder contends that Weitz and Idaho Farmway have failed to present a complete appellate record which will enable this Court to review the district court's denial of the change of venue motion. However, Corder concedes that there is no factual dispute regarding the change of venue motion. Although Corder is correct that the transcript from the hearing on the motion for change of venue is missing from the appellate record,

---

1. Idaho Farmway actually paid the property taxes in the amount of $4,070.46, which the district court determined was owed to Idaho Farmway by Corder.

the record does include the minutes from the hearing and also includes the district court's memorandum decision and order. The record is therefore sufficient for us to review whether the district court reached the correct legal conclusion when it decided venue was proper in Elmore County.

### 1. Standard of review

■ The interpretation of a statute is an issue of law over which we exercise free review. *Idaho Fair Share v. Idaho Public Utilities Comm'n,* 113 Idaho 959, 961–62, 751 P.2d 107, 109–10 (1988). When interpreting a statute, we will construe the statute as a whole to give effect to the legislative intent. *George W. Watkins Family v. Messenger,* 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990). The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results. *Id.* at 540, 797 P.2d at 1388.

### 2. Analysis

■ Idaho Rule of Civil Procedure 40(e) provides that a trial judge may grant a change of venue in any civil action and must grant a change of venue when the county designated in the complaint is not the proper county. Weitz argues that Elmore County was not the proper county and the district court was required to grant his motion for change of venue.

Idaho Code Section 5–404 reads, in relevant part:

> [I]n all actions against any corporation organized under the laws of the state of Idaho, [the] suit or action shall be commenced and tried in any county of this state where the defendant has its principal place of business *or in the county in which the cause of action arose.*

(Emphasis added.).

Under I.C. § 5–404, this action could be brought against Idaho Farmway, a corporation, in either the county where the corporation has its principal place of business or in a county where the cause of action arose. Corder brought three causes of action in this case: breach of contract, unjust enrichment,

and false labor lien. If any of the causes of action arose in Elmore County, then the district court properly exercised its discretion when it allowed the case to be heard in Elmore County.

■ Although no Idaho appellate court has addressed this issue, it has been recognized in other jurisdictions that, for the purposes of venue, a breach of contract action arises in the county where the contract was made, where it was breached or where the damage occurred. *See Oliver v. Severance,* 542 So.2d 408 (Fla.Dist.Ct.App.1989); *Tropicana Products, Inc. v. Shirley,* 501 So.2d 1373 (Fla.Dist.Ct.App.1987); *Quick Const. Corp. v. Loribeth Theatres, Inc.,* 186 A.D.2d 546, 588 N.Y.S.2d 400 (N.Y.App.Div.1992); *Grange Mutual Casualty Co. v. Thompson,* 61 Ohio App.3d 190, 572 N.E.2d 237 (1990); *Dee Exploration v. Lightsey,* 641 S.W.2d 660 (Tex.Ct.App.1982); *Rector v. Approved Financial Corp.,* 1999 WL 262437 (Va. Cir. Ct.1999); *McGuire v. Fitzsimmons,* 197 W.Va. 132, 475 S.E.2d 132 (1996).

In this case, there is evidence upon which the district court could properly find that the contract was created and breached, and the ensuing damages occurred, in Elmore County. During a conversation between Tim Corder and Dan Weitz at a sporting goods store in Elmore County, Corder asked Weitz if everything was alright, and Weitz responded everything was fine and to "go ahead," thus finalizing the formation of the contract. In addition, the breach occurred in Elmore County when Idaho Farmway refused to repair the pumps for the irrigation system. Moreover, the damages occurred in Elmore County, when Corder was forced to pay for repairs to the pumps on the property.

■ In addition, the unjust enrichment claim and the false labor lien claim arose in Elmore County as well. The unjust enrichment action involved improvements made by Corder to property located in Elmore County. The false labor lien action involved a lien filed with the Secretary of State on crops that were being grown on the 720 acres in Elmore County at the time the lien was filed.

Therefore, the three causes of action arose in Elmore County under I.C. § 5–404, and

the district court properly· exercised its discretion when it denied the motion for change of venue.

## B.   BREACH OF CONTRACT CLAIM

Initially, Idaho Farmway claims that there was no meeting of the minds between the parties and that, if a lease existed, its terms were as testified to by Weitz. Idaho Farmway also asserts that the lease agreement was invalid because it violated the statute of frauds, that Corder violated the implied covenant of good faith and fair dealing, and that Weitz did not have the authority to act as an agent on behalf of Idaho Farmway.

### 1.   Standard of review

▅▅▅ A trial court's findings of fact will be upheld on appeal if the findings are supported by substantial and competent, although conflicting, evidence. *Kootenai Elec. Coop., Inc. v. Washington Water Power Co.,* 127 Idaho 432, 434, 901 P.2d 1333, 1335 (1995). When the trial judge is the trier of fact, it is his or her province to weigh the conflicting evidence and testimony and to judge the credibility of witnesses. *Id.* at 435, 901 P.2d at 1336. We freely review the trial court's conclusions of law. *Id.*

Before pronouncing its extensive findings of fact and conclusions of law, the district court stated:

I want to make the initial observation that this litigation has turned, as pointed out by counsel for the plaintiff, largely on the credibility of the two primary players in this case, Tim Corder, Sr. and Dan Weitz.

I have resolved what has been, putting it mildly, sharply diverging testimony based upon my evaluation of the credibility of the two primary actors. In doing that, I have largely evaluated this on the conduct and demeanor while testifying. I've also given a great deal of thought to the internal consistency of the parties' respective testimony. Certainly I viewed the consistency of the testimony of these two primary witnesses in view of positions that they've taken at other times in this litigation and as well as in view of all the evidence presented in this case, including the testimony of other witnesses.

... I will state that with respect to the credibility of Mr. Weitz, I would have to say that I was repeatedly struck, over and over again, as to Mr. Weitz's willing to say—willingness to say whatever he thought might advance the interest of himself or Idaho Farmways, regardless of whether there might be any basis in the truth for his testimony.

In short, Mr. Weitz left me with an abiding impression of his basic dishonesty in all matters appurtenant to this litigation.

In contrast, it was my perception that Tim Corder, Sr. provided truthful and accurate testimony in this case.

### 2.   Meeting of the minds

▅▅▅ Idaho Farmway claims there was not a meeting of the minds sufficient to create a binding contract. In *Haener v. Ada County Highway Dist.,* 108 Idaho 170, 697 P.2d 1184 (1985), the Court noted that it is the "very essence of contract law that there must be a meeting of the minds of the parties for the contract to be binding upon the parties." *Id.* at 173, 697 P.2d at 1187. The question of whether there was a sufficient meeting of the minds to form an express agreement is to be determined by the trier of fact. *Bischoff v. Quong–Watkins Properties,* 113 Idaho 826, 828, 748 P.2d 410, 412 (Ct. App.1987).

▅▅▅ The district court found that the parties first met in August 1994. They had discussions about the terms of the lease and came to a general agreement on those terms. Later, in September, the agreement became more definite. The district court found:

On September 10, 1994, Dan Weitz faxed a draft proposal to Tim Corder, which was admitted into evidence as Plaintiff's 3.

Mr. Corder replied, in written form, in the document which has been admitted into evidence as Plaintiff's Exhibit 5.

Within one week of that time, there was a discussion in which Tim Corder asked if the reply was acceptable. Dan Weitz indicated that things were fine and to go ahead.

Based upon the agreement and the express understanding that Tim Corder would be permitted to begin the necessary fall work which was necessary to prepare a portion of the land for the winter wheat crop, fall work was commenced by plaintiff in early October 1994.

■ The proposed lease was drafted by Weitz and faxed to Corder on September 10, 1994. It specified a term of five years, a base rent to be paid in two installments, an obligation that Idaho Farmway supply handlines and a requirement that it keep the pumps and pipe for the handlines in good repair. Corder responded on September 13 by faxing Weitz questions he had regarding the draft and proposed changes he wanted. In his response, Corder indicated, *inter alia,* that two payments were acceptable, but said that the payments were inconsistent with the industry standards and that one payment should be made in March and the other in August. Corder testified:

[Counsel]: After that September 13th letter, did you have any contact with Dan and, if so, approximately when did you?

[Corder]: Yeah, it was probably the week—within the week after this I was traveling through Mountain Home and saw his Bronco parked in front of Gem State Sporting Goods and I stopped there to see if that was in fact him and I wanted to talk to him just a moment. And indeed it was him. He was in a conversation with the individual who owned that establishment and when they broke their conversation, I asked Dan if everything was all right and he said, "Yes, everything is fine. Go ahead."

[Counsel]: Now, were you talking about the farm?

[Corder]: Yes.

As an appellate court, we cannot make credibility determinations. The district court determined that Weitz's testimony was self-

serving and dishonest. Contrarily, the district court found Corder testified truthfully. Corder testified that he and Weitz came to an agreement based on prior negotiations and that Weitz told him to go ahead with his work on the farm. Upon review, we conclude that there was sufficient evidence to support the district court's finding that the parties had a meeting of the minds necessary to establish a contract to lease the property.

### 3. Lease terms

#### a. Payment dates

■ Idaho Farmway contends that the $71,500 should have been paid in two payments, one in November and one in March, in accordance with the September 10 fax proposed lease. Idaho Farmway argues that because Corder failed to fully perform by March, it was excused from performing. Contrarily, Corder testified that the decision on the payment due date came about as follows:

[Corder]: [Weitz] said that—I don't recall that we talked about the pump or the well. Everything was fine. They were working on the lease. They were going to get that drawn up and finished up and—but that they really needed some money. And I said, "Well, that's fine. We had agreed for half in the spring and if it's half now, then that's fine. I'll give you a check for half."

. . . .

[Counsel]: Okay. And did you write him a check that day?

[Corder]: Yes, I did.

[Counsel]: For?

[Corder]: 36,000.

[Counsel]: And do you recall approximately when that date was?

[Corder]: January 12th through the 15th, somewhere in there.

The district court found Corder to be a credible witness. Weitz did not deny that this payment was made and accepted.[2] Corder testified that the parties agreed that $36,000 could be paid in mid-January, and the rest

---

**2.** It is ironic that Idaho Farmway accepted a $36,000 payment in January 1995 on a lease

which it now claims never existed.

would be paid at a later date. In accordance with this testimony, Corder's response to the initial lease proposal suggested that the payment dates be March and August. We conclude that this is sufficient evidence to support the district court's finding.

### b. Five-year lease

■ Idaho Farmway contends there is not substantial evidence to support the district court's finding that the lease term was for five years. Contrarily, the initial proposed lease drafted by Weitz set the term of five years. Corder's response did not reject Weitz's proposal in this regard. Furthermore, Corder testified that he understood the term of the lease to be for five years. This is sufficient evidence which supports the district court's finding.

### c. Pump repairs

■ Idaho Farmway argues that the evidence is insufficient to support the district court's finding that it was responsible to make sure the pumps were in working order and providing enough water to sustain Corder's crops. Idaho Farmway also claims the repairs were unnecessary and asserts that, because it did not breach the lease when it refused to repair the pumps, Corder was in breach when he withheld the second rent payment.

Corder testified that Weitz represented to him that well number one was capable of pumping 2,700 gallons of water per minute and well number two could pump 2,000 gallons per minute. When asked about who was responsible for the repair of the water pump system, Corder testified:

> [Corder]: That each of those [pump stations and panels] would be done by them. That on those pump stations, that number one would need to be new because it didn't exist. That number two would need to be rebuilt and number three rewired and the structure rebuilt.
>
> ....
>
> [Counsel]: There are notes about wells also, Tim?
> [Corder]: Yes.

> [Counsel]: What was your understanding about the discussion about the wells?
> [Corder]: That the number one would be removed to—
> [Counsel]: The pump in that one?
> [Corder]: The pump and motor would be removed in number one to determine why it was aerating and to solve that problem, if possible.

Corder testified that as spring approached and the ground became dry, his need to water the crops became imminent. Idaho Farmway did not repair the pumps as promised, so Corder was forced to hire someone to make the repairs. These costs, and other costs reasonably incurred by Corder, actually exceeded the $35,500 payment which he owed to Idaho Farmway for rent. Corder wrote Weitz a letter on May 10, 1995, telling him that he would treat the costs incurred as payment for the rent due and any excess costs as prepayments for the following year's rent. Weitz never responded and never made a demand for the second payment, so Corder reasonably believed that his proposal had been accepted. The district court found this evidence to be credible and reliable, and Idaho Farmway did not submit credible evidence otherwise. Therefore, we conclude there is substantial evidence that Corder did not breach the contract and, in fact, Idaho Farmway breached the contract as it continued to withhold performance.

### 4. Statute of frauds

■ Idaho Farmway claims the lease is invalid because it violates the statute of frauds. Idaho Code Section 9–503 provides that a lease exceeding a term of one year must be in writing. Idaho Code Section 9–504 provides that the "preceding section [9–503] must not be construed to affect the ... power of any court to compel the specific performance of an agreement, in case of part performance thereof." Thus, an oral agreement for the sale or lease of property is enforceable if partially performed. *See Wing v. Munns*, 123 Idaho 493, 499, 849 P.2d 954, 960 (Ct.App.1992); *Mikesell v. Newworld Development Corp.*, 122 Idaho 868, 873, 840 P.2d 1090, 1095 (Ct.App.1992).

■ In this case, the district court found that the parties agreed to lease a particular 720 acres of farmland for a term of five years at a $71,500 base yearly rent. Corder further agreed to pay for water assessment, electricity and property taxes. Corder made and Idaho Farmway accepted the first payment on January 15. In addition to this partial performance, Corder took possession of the land, planted and harvested spring crops in 1995 and did the fall work to prepare for the following year's crops. Thus, there was sufficient evidence presented to show that the oral agreement should have been taken outside of the statute of frauds and, therefore, it was enforceable.

### 5. Implied covenant of good faith and fair dealing

■ Idaho Farmway asserts that Corder breached the implied covenant of good faith and fair dealing when he withheld the second rent payment. Corder argues that Idaho Farmway failed to raise this issue below. We agree. Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave,* 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991). Therefore, we will not address it on appeal.

### 6. Weitz's authority to act on behalf of Idaho Farmway

■ Idaho Farmway submits that Weitz lacked authority to act on its behalf in the argument section of the appellants' brief. Again, Idaho Farmway failed to raise this issue below, and we will not address it on appeal. *See Sanchez,* 120 Idaho at 322, 815 P.2d at 1062.

## C. AWARD OF DAMAGES FOR IMPROVEMENTS AND REPAIRS

Idaho Farmway contends that it did not agree to include forty handlines in the base rental price and did not agree to pay for the parts to repair the handlines, and also claims Corder took the handlines with him when he vacated the property.

■ The district court determined that the use of the handlines was included in the base rental price and that Idaho Farmway

agreed to pay for the parts needed to repair and modify the lines. Corder testified that the forty lines were to be provided as part of the lease agreement and also testified that Idaho Farmway was supposed to present the handlines in good working order. Idaho Farmway failed to do so, and Corder was forced to repair the handlines. In addition to Corder's testimony, the proposed lease drafted by Weitz obligated Idaho Farmway as follows: "Leaseor *[sic]* must supply 1, ¼ mile handline for every 18 acres of irrigated farm land, equaling approx. 40 lines." This is substantial evidence to support the district court's finding that Idaho Farmway was obligated to pay Corder for the parts used to repair the handlines.

The district court found "no credible evidence on the claim for conversion of handlines." On appeal, Idaho Farmway claims that Corder lost or took five handlines with him when he vacated the property. Idaho Farmway, however, does not support its claim with a citation to any evidence in the record. Moreover, the district court determined there was no credible evidence to support the claim. Thus, we conclude Idaho Farmway has failed to show that the district court's factual findings were erroneous.

## D. QUANTUM MERUIT AND IMPLIED IN LAW CONTRACT

Idaho Farmway argues that it is entitled to the fair rental value of the forty handlines and also an increase in the rental value of the land. Idaho Farmway asserts that the lease agreement was based on the assumption that wheat would be grown on the property. Rather, Corder grew sugar beets, which, according to Idaho Farmway, would place the rental value of the property at a higher rate per acre. Idaho Farmway seeks payment for the additional amount per acre.

Idaho Farmway fails to cite evidence in the record that might support this allegation. In addition, the district court determined that the base rent was $71,500, including the forty handlines. We have concluded above that there was sufficient evidence to support these findings, so Idaho Farmway's claim that it should receive additional compensation is meritless.

## E. AWARD OF DAMAGES FOR FALSE LABOR LIEN CLAIM

Idaho Farmway and Weitz contend that the district court should not have awarded any damages accruing after March 26, 1996, because the labor lien expired by statutory limitation on that date. Thus, the district court's award, which allowed damages for interest accruing at $32.55 per day until May 29, 1996, was in error. They also claim that Corder was in constructive receipt of checks he received for farm products and, therefore, could have avoided the damages incurred. Last, Weitz and Idaho Farmway claim Corder should have filed an amended tax return for 1995, thereby avoiding the self-employment tax he incurred in 1996.

### 1. Lien expiration

██ Weitz and Idaho Farmway cite no authority in support of their claim that damages from the false labor lien cannot continue to accrue after the lien expires. Furthermore, they fail to present a cogent reason why damages stop accruing after the statutory expiration of the lien, so we will not address the substance of this issue. *See State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

### 2. Constructive receipt

The district court found:

As a result, and solely as a result, of the filing of the farm labor lien, Amalgamated Sugar Company issued checks and J.R. Simplot issued checks payable to Idaho Farmways, Farm Credit Services and T & LC Farms.

Again, the court makes a specific finding that Idaho Farmways, Incorporated would not have been named as a joint payee had it not been for the filing of the false labor lien by Dan Weitz.

The total number of checks issued in 1995 by Amalgamated Sugar Company to the three joint payees total $241,328.74. The J.R. Simplot potato check for 1995 was $64,402.37.

The court further finds that Dan Weitz, acting on behalf of Idaho Farmways, Incorporated, wrongfully refused to release the claim on the funds.

Farm Credit Services would not, and quite properly did not, agree to the terms demanded by Dan Weitz on behalf of Idaho Farmways as to the release of the funds represented by the checks from Amalgamated and from J.R. Simplot.

Again, it's clear to the court that this was an evident effort on the part of Dan Weitz to secure an advantage, and that's putting it mildly. Bluntly stated, it's to extort funds from Mr. Corder on his wrongful claim of a crop share agreement.

The district court found that damages resulted from the false labor lien in the form of increased interest on Corder's operating loan for his farm in the amount of $14,042.97 and tax consequences in the amount of $14,657.

Weitz and Idaho Farmway assert that Corder had constructive receipt of the checks, even though the checks were joint payee checks, and that Corder could have used the proceeds from the checks as he chose.[3] However, they cite no authority in support of this argument, so we will not address its substance. *See Zichko,* 129 Idaho at 263, 923 P.2d at 970.

### 3. Amended tax return

██ Corder presented evidence that he was required to pay extra self-employment tax in 1996 because income he should have received in 1995 was delayed due to the false labor lien. The district court awarded damages for this additional tax liability. Weitz and Idaho Farmway argue that these damages should not have been awarded because Corder could have amended his 1995 income tax return and, thereby, avoided the detrimental tax consequences. To the contrary, Corder's accountant testified that Corder could not have avoided the extra self-employment tax. This is sufficient evidence on which the district court relied to find that

---

3. Weitz and Idaho Farmway are in the awkward position of having refused to allow Corder to use the proceeds of the checks in 1995, and now during this litigation are claiming Corder had

constructive receipt of the proceeds. Perhaps it is because of diverging positions like this that the district court found Weitz's own testimony in this case inconsistent and dishonest.

Corder could not have avoided these damages.

### F. ATTORNEY FEES BELOW

■ Weitz and Idaho Farmway argue that the district court erred when it concluded Corder was the prevailing party. They are asserting, once again, that the district court erred when it determined Idaho Farmway breached the contract. Weitz and Idaho Farmway argue that the district court should have found Corder in breach and awarded them damages and attorney fees. We have affirmed the district court's opinion in all other regards, including the finding that Idaho Farmway breached the contract. Thus, we also affirm the district court's finding that Corder was the prevailing party and its award of fees.

### G. COSTS AND ATTORNEY FEES ON APPEAL

■ Generally, the prevailing party is allowed to recover a reasonable attorney fee in a civil action based on a commercial transaction. I.C. § 12–120(3). Thus, Corder, who is the prevailing party on the breach of contract claim, is awarded reasonable attorney fees on appeal. In addition, I.C. § 45–309 provides that a person who files a false labor lien will be held liable to the producer for actual damages and will also owe costs and attorney fees. Therefore, Corder, as the producer who is succeeding on the false labor lien claim, is awarded costs and reasonable attorney fees on appeal.

### III.

### CONCLUSION

We conclude the district court did not err when it denied Weitz's and Idaho Farmway's motion for a change of venue. We also conclude that the district court did not err when it held that Idaho Farmway had breached the lease agreement and held it liable to Corder. Last, we conclude substantial and competent evidence supports all of the district court's findings of fact challenged on appeal. We affirm the district court's judgment in all regards. Costs and attorney fees

on appeal are awarded to respondent, Corder.

Judge LANSING and Judge Pro Tem BURDICK, concur.