SOLOMAN, Appellant,

v.

EXCEL MARKETING, INC., Appellee.

[Cite as *Soloman v. Excel Marketing, Inc.* (1996), 114 Ohio App.3d 20.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 95–CA–76.

Decided Sept. 13, 1996.

22

*Andrew M. Engel,* for appellant.

*Christopher W. Carrigg,* for appellee.

FAIN, Judge.

Plaintiff-appellant Ray Soloman appeals from a judgment awarding him $2,000 on his unjust enrichment claim and awarding defendant-appellee Excel Marketing, Inc. ("Excel") $600 on its breach of contract counterclaim. Soloman contends that the Kettering Municipal Court erred by transferring venue to Springfield Municipal Court because Kettering was a proper venue for his claims. Soloman also maintains that the Springfield Municipal Court, as the trial court, failed to exclude certain evidence and to impose sanctions against Excel for its failure to comply with his discovery requests. Soloman further argues that the trial court erred by denying his motion for a new trial and by failing to award him attorney fees, costs, and interest pursuant to R.C. 4113.61.

We conclude that the Kettering Municipal Court erred by transferring venue to Springfield Municipal Court because Kettering was a proper venue for Soloman's action. We also find that the trial court erred by failing to act upon Soloman's request for reasonable expenses, including attorney fees, as a sanction for Excel's failure to comply with his discovery requests. Accordingly, the judgment of the trial court is reversed, and the cause is remanded for the trial court (1) to determine Soloman's reasonable expenses and (2) to transfer this case to the Kettering Municipal Court for further proceedings.

I

Plaintiff-appellant Ray Soloman is a construction contractor and part owner of Southside Construction, a construction business located in Kettering, Ohio. On March 25, 1993, Soloman entered into an oral contract with defendant-appellee Excel Marketing, Inc., a manufacturer's representative, to install a kitchen stove

hood and exhaust fan in the Delta Sigma Phi house at Wittenberg University, located in Springfield, Ohio. Excel had already agreed to provide Findlay Equipment Sales with the kitchen stove hood and exhaust fan and wanted Soloman to install the equipment. The agreed contract price between Soloman and Excel was $2,000 for installation meeting Springfield's building code. Soloman, who was not licensed to conduct business in Springfield, subcontracted the work to Graham–Russell Mechanical, which, despite several setbacks, eventually installed the kitchen stove hood and exhaust fan. During the installation, Graham–Russell Mechanical incurred unanticipated expenses in order to conform to the Springfield building code. Despite Graham–Russell Mechanical's efforts, the installed kitchen stove hood and exhaust fan still did not conform to code, and Excel was forced to pay for further construction to satisfy Springfield's requirements. After paying Graham–Russell Mechanical $2,580 for its work, Soloman invoiced Excel $2,890 to cover the $2,000 contract price and various extras needed to comply with the building code. Excel refused to pay on the contract, claiming that its own costs in expense and inconvenience exceeded the $2,000 contract price.

On February 15, 1994, Soloman filed a complaint in the Kettering Municipal Court claiming that Excel's failure to pay on the contract violated R.C. 4113.61 and resulted in its unjust enrichment. Soloman also filed his first set of interrogatories and request for the production of documents. In response, Excel filed a motion to dismiss Soloman's action based upon improper venue. The Kettering Municipal Court granted Excel's motion in part, stating that Kettering was not a proper venue for the action and transferring the action to the Springfield Municipal Court pursuant to Civ.R. 3(C).

On December 5, 1995, Excel filed its answer, which was amended to include a counterclaim for breach of contract based upon Soloman's failure timely to install the kitchen stove hood and exhaust fan to building code specifications. On May 10, 1995, two days before the trial, Excel responded to Soloman's first set of interrogatories; however, Excel did not respond to Soloman's request for the production of documents. A trial was held on May 12, 1995, before the Springfield Municipal Court, and, on May 19, 1995, the trial court issued its decision in which it awarded Soloman $2,000 for his quantum meruit claim and Excel $600 for its breach of contract counterclaim. On June 8, 1995, Soloman filed a motion for a new trial or, alternatively, for sanctions against Excel based upon Excel's failure to timely comply with his discovery requests. The trial court denied Soloman's motion.

From the judgment of the trial court, Soloman appeals.

## II

Soloman's first assignment of error is as follows [1]:

"The trial court erred in granting defendants' motion for change of venue."

Soloman argues that the Kettering Municipal Court erred by transferring his action to the Springfield Municipal Court. Soloman maintains that Kettering was a proper venue pursuant to Civ.R. 3(B)(6) because it was the location where Excel failed to pay for his services as alleged in the complaint.

Venue is proper when the plaintiff chooses a court located in any county described in the first nine provisions of Civ.R. 3(B). These provisions have equal status, and a plaintiff may choose among them with unfettered discretion. *Morrison v. Steiner* (1972), 32 Ohio St.2d 86, 89, 61 O.O.2d 335, 337–338, 290 N.E.2d 841, 843–844; *Glover v. Glover* (1990), 66 Ohio App.3d 724, 728, 586 N.E.2d 159, 162.

"The first nine provisions of [Civ.R.] 3(B) are alternatives, and each may be a proper basis for venue, but they do not have to be followed in any order. Plaintiff has a choice where the action will be brought if any of the counties specified in [Civ.R.] 3(B)(1) through (9) are a proper forum under the facts of the case." *Varketta v. Gen. Motors Corp.* (1973), 34 Ohio App.2d 1, 6, 63 O.O.2d 8, 11, 295 N.E.2d 219, 223.

Thus, if the plaintiff has chosen a proper forum from among the options provided for in the rule, it may not be disturbed.[2]

Civ.R. 3(B)(6) permits the plaintiff to choose, as a proper venue, any county "in which all or part of the claim for relief arose." In an action alleging breach of contract, the cause of action arises where the breach took place. *Grange Mut. Cas. Co. v. Thompson* (1990), 61 Ohio App.3d 190, 200, 572 N.E.2d 237, 243–244; *Atwood Resources, Inc. v. Lehigh* (1994), 98 Ohio App.3d 293, 299, 648 N.E.2d 548, 551–552. Various jurisdictions have held that the refusal to pay

---

**1.** We recognize some discrepancy between the statement of assignments of error on page iv of Soloman's brief and the language of those same assignments of error as they appear later in the brief. We consider the statement of assignments of error, as required by App.R. 16(A)(3), to be the correct version.

**2.** The doctrine of *forum non conveniens* permits a trial court to deny a plaintiff the use of its jurisdiction as an otherwise proper venue to "further the ends of justice and promote the convenience of the parties." *Chambers v. Merrell–Dow Pharmaceuticals, Inc.* (1988), 35 Ohio St.3d 123, 125, 519 N.E.2d 370, 372. However, the doctrine of *forum non conveniens* is not available to transfer a case from one proper Ohio venue to another, since that is not provided for in Civ.R. 3(C), pertaining to changes of venue, presumably because Ohio is a small enough state geographically that any inconvenience may be ameliorated through the use of depositions. *Id.* at 131–132, 519 N.E.2d at 377–378.

money due on a contract results in a breach of that contract at the place where the money was to be paid and that, absent an express agreement to the contrary, proper venue is presumed to lie in the county in which the payee's place of business is located. *Lorenz Equip. Co. v. Ultra Builders, Inc.* (Feb. 23, 1993), Franklin App. No. 92AP–1445, unreported, 1993 WL 51095, at 2; *Janet's Reporting & Video Serv. v. Rauchman* (May 29, 1990), Butler App. No. CA89–10–150, unreported, 1990 WL 70929, at 4; *Thompson v. G & D Transport, Inc.* (Aug. 22, 1989), Gallia App. No. 88–CA–12, unreported, 1989 WL 98506, at 6–7.

In his complaint, Soloman alleged that Excel failed to pay him pursuant to an oral contract and that he was entitled to relief as a result. The Kettering Municipal Court found that Clark County, Ohio, was the proper forum for Soloman's action because it was the location where he performed the contract. Further, the Kettering Municipal Court noted that the witnesses for the parties were located in Clark County and that a view of the scene would only be available in that county. Accordingly, the action was transferred to the Springfield Municipal Court, which had countywide jurisdiction.

In light of the allegations set forth in Soloman's complaint, we conclude that Kettering, Ohio, was a proper venue for Soloman's action and that the Kettering Municipal Court erred by transferring his action to the Springfield Municipal Court. The complaint alleged that the cause of action was based upon nonpayment of a contractual debt. Both parties stipulated that no specific place was designated for payment on the contract, so Soloman's place of business, Kettering, Ohio, is presumed as a matter of law to be the location where the claim for relief arose. See *Lorenz Equipment Co.; Janet's Reporting & Video Serv.; Thompson, supra.* We cannot agree with the Kettering Municipal Court that the place where Soloman was to perform the contract was dispositive to the proper forum in this case. Soloman's performance of the contract is not the basis for his claims. Accordingly, we conclude that Soloman properly chose Kettering, Ohio, as the forum for his action and that the Kettering Municipal Court erred by altering that forum. The transfer of venue to Springfield Municipal Court was improper, and this, standing alone, constitutes reversible error. See *Grange*, 61 Ohio App.3d at 201, 572 N.E.2d at 245, fn. 1.

Excel argues that the central issue of this case is whether Soloman performed pursuant to the contract and that the location of his performance, *i.e.*, Clark County, Ohio, was the proper venue for this action. We disagree. In the case before us, venue is determined by where the *plaintiff's* claim for relief arose, not where the defendant's counterclaim for relief arose. See Civ.R. 3(B)(6). The complaint alleges that Excel's failure to tender payment was the basis for Soloman's relief. Further, both Soloman and Excel agree that Excel was to pay Soloman in Kettering, Ohio. In its appellate brief, Excel admits that "the parties

stipulated that there was no agreement between them because payment was to be made at Appellant's place of business." Consequently, the location of the installation of equipment and the location of the witnesses were not relevant to a finding of proper venue in this case.

Soloman's first assignment of error is sustained.

## III

Soloman's second assignment of error is as follows:

"The trial court erred in failing to exclude evidence and impose sanctions on defendants for failure to comply with plaintiff's discovery requests."

In his second assignment of error, Soloman argues that Excel's failure to timely comply with his discovery requests warranted sanctions, including the exclusion of Excel's evidence at trial. Soloman maintains that he suffered substantial prejudice by Excel's dilatory and unverified response to his first set of interrogatories and by Excel's failure to respond at all to his request for the production of documents.

Excel admits that it failed to respond adequately to Soloman's discovery requests, but claims that Soloman should have known that "some" evidence would be presented at trial on the issues raised in Excel's counterclaim. Further, Excel maintains that it did not respond to Soloman's requests because of the relatively small dollar value of the case and based upon the "spirit of judicial economy." Finally, Excel claims that Soloman failed to make an objection when the disputed evidence was introduced at trial and, therefore, waived his right to appeal.

In describing the discovery process, the Supreme Court of Ohio has recognized:

"One of the purposes of the Rules of Civil Procedure is to eliminate surprise. This is accomplished by way of a discovery procedure which mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries." *Jones v. Murphy* (1984), 12 Ohio St.3d 84, 86, 12 OBR 73, 75, 465 N.E.2d 444, 446.

Sanctions for noncompliance with the discovery rules are set forth in Civ.R. 37, which permits the trial court to make orders and to impose sanctions for a party's failure to timely serve answers or objections to interrogatories or to serve a written response to a request for the inspection of documents. Civ.R. 37(D); *Williams v. S. Ohio Correctional Facility* (1990), 67 Ohio App.3d 517, 523, 587 N.E.2d 870, 874–875. Such sanctions are permissive, based upon the discretion of the trial court. *Toney v. Berkemer* (1983), 6 Ohio St.3d 455, 458, 6

OBR 496, 498–499, 453 N.E.2d 700, 702–703; *Getter v. Getter* (1993), 90 Ohio App.3d 1, 5, 627 N.E.2d 1043, 1045–1046.

Certain sanctions are not discretionary, but are mandated by the language of Civ.R. 37(D) itself:

"In lieu of any order or in addition thereto, the court *shall* require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court expressly finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." (Emphasis added.)

 Absent an express finding that the failure to comply was substantially justified or that other circumstances would make an award unjust, the trial court must grant a party's request for reasonable expenses. *Bobko v. Sagen* (1989), 61 Ohio App.3d 397, 413, 572 N.E.2d 823, 833–834; *Babb v. Ford Motor Co.* (1987), 41 Ohio App.3d 174, 180, 535 N.E.2d 676, 682–683; *Rogers v. Kazee* (1983), 10 Ohio App.3d 139, 142, 10 OBR 190, 192–194, 460 N.E.2d 1149, 1152–1153; *Bilikam v. Bilikam* (1982), 2 Ohio App.3d 300, 306, 2 OBR 332, 338–339, 441 N.E.2d 845, 851–852. By contrast, the exclusion of evidence is not a mandatory sanction, but is confided to the sound discretion of the trial court. *Toney, supra,* 6 Ohio St.3d at 458, 6 OBR at 498–499, 453 N.E.2d at 702–703. Moreover, "[t]he exclusion of reliable and probative evidence is a severe sanction and should be invoked only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise." *Nickey v. Brown* (1982), 7 Ohio App.3d 32, 34, 7 OBR 34, 37, 454 N.E.2d 177, 180, citing *State v. O'Neil* (Feb. 17, 1982), Wayne App. No. 1771, unreported, 1982 WL 4880. In general, the severity of the sanction should depend on whether the party who submitted the discovery request was prejudiced by the failure of the opposing party to act, regardless of that party's motive or intent. *Wright v. Structo, Div. of Eljir Mfg., Inc.* (1993), 88 Ohio App.3d 239, 244, 623 N.E.2d 694, 698.

 The record reveals that Excel failed to respond timely and adequately to Soloman's first set of interrogatories and failed to respond until trial to Soloman's request for the production of documents. Pursuant to Civ.R. 37(D), Soloman was entitled to reasonable expenses, including attorney fees, resulting from Excel's failure to respond properly to his discovery requests. The trial court did not make an express finding, pursuant to Civ.R. 37(D), that Excel's failure to act was substantially justified or that an award of reasonable expenses would be unjust, and, consequently, the trial court erred by not awarding Soloman reasonable expenses.

With respect to the exclusion of evidence and other sanctions, we understand Soloman's desire to seek an effective remedy for Excel's violation of the Rules of

Civil Procedure. Certainly, Excel's tenuous explanations for its failure to respond to Soloman's discovery requests suggest that sanctions may have been appropriate. However, during the trial, the trial court intimated that Excel's failure to respond timely to discovery did not prejudice Soloman's case. We cannot conclude from the record that the trial court's finding was an abuse of discretion. The documents and other evidence presented at trial by Excel narrowly focused on its counterclaim that Soloman failed to install the kitchen stove hood and exhaust fan satisfying Springfield's building code standards, a contention that Soloman did not seriously dispute. Accordingly, we cannot conclude that the result of the trial would have been different had Excel responded timely to Soloman's discovery requests.

Soloman's second assignment of error is sustained in part. This cause is remanded for determination of Soloman's reasonable expenses, including attorney fees, as a result of Excel's failure to respond to discovery.

## IV

Soloman's third assignment of error is as follows:

"The trial court erred in denying plaintiff's motion for a new trial."

Soloman contends that Excel's failure to respond to his discovery requests prejudiced his right to a fair trial and that the trial court erred by not granting his motion for a new trial. In light of our disposition of Soloman's first assignment of error, remanding this cause to the trial court to transfer this action to the Kettering Municipal Court for a new trial, we consider this argument moot.

Soloman's third assignment of error is overruled.

## V

Soloman's fourth assignment of error is as follows:

"The trial court erred in not awarding plaintiff attorney fees, costs, and interest in accordance with R.C. 4113.61."

In his final assignment of error, Soloman claims that, as a subcontractor, he is entitled to attorney fees, costs, and interest pursuant to R.C. 4113.61 because Excel, as a contractor, failed to pay his invoice after receiving payment from Findlay Equipment Sales for the installation.

In response to Soloman's claim, Excel argues that R.C. 4113.61 is not applicable to this case because the statute applies only to owners or contractors that are government authorities. Further, Excel claims that, in any event, it was not a contractor and, therefore, R.C. 4113.61 did not apply. Finally, Excel argues that

Soloman breached the oral contract between them and that this breach, along with equitable considerations, precludes the application of the statute.

In general, R.C. 4113.61 essentially provides that a contractor or higher-tier subcontractor must pay the subcontractor or lower-tier subcontractor on a timely request for payment within ten calendar days after receiving payment from the owner or contractor. Failure to pay within the ten-day period results in the accrual of interest and, after the trial court considers all relevant factors, the possible sanction of attorney fees. R.C. 4113.61(B).

We are not persuaded by Excel's argument that R.C. 4113.61 applies only to "government owners" or public projects. Section 3 of Am.Sub.H.B. No. 238, 14 Ohio Laws, Part III, 3730, states that the General Assembly intended for the statute to apply to "any project involving an improvement *or* public improvement." (Emphasis added.) Further, the definition of an "owner" set forth in the statute merely "includes" government authorities as opposed to "means" government authorities, whereas the definitions of "contractor," "lower-tier subcontractor," "Lower-tier materialman," and "wages due" use the verb "means" in setting forth their definitions. R.C. 4113.61(F). Accordingly, we interpret R.C. 4113.61 as applying to private construction projects as well as to public construction projects.

We are similarly unpersuaded by Excel's argument that it was not a contractor, or more accurately, a subcontractor. Excel contracted with Findlay Equipment Sales to provide a kitchen stove hood and exhaust fan *and* to have that equipment installed in the Delta Sigma Phi house. To accomplish that task, Excel contracted with Soloman to install the equipment. The record indicates that a kitchen stove hood and exhaust fan are permanent fixtures rather than personal property and that the installation of that equipment qualifies as an improvement to a structure. Accordingly, Excel was a "subcontractor," as defined by R.C. 1311.01, and Soloman was a "lower-tier subcontractor," as defined by R.C. 4113.61(F)(3).

Despite the relevance of R.C. 4113.61, we conclude that Excel's failure to pay Soloman for the installation of the kitchen equipment was not in violation of the statute. R.C. 4113.61 is based upon the premise that the subcontractor's or materialman's request for payment is based upon a valid and enforceable contractual claim. In the case before us, the trial court found that Soloman had breached the oral contract with Excel by failing to install the kitchen equipment to building code requirements. It awarded Soloman $2,000, not on the contract, but rather based upon the equitable principle of *quantum meruit*. In light of the trial court's finding, we cannot hold Excel to the provisions of the statute because it was entitled in good faith to withhold payment for Soloman's work based upon

his breach of contract. The statute contemplates that a contract obligor may withhold amounts "necessary to resolve disputed * * * claims involving the work or labor performed" by the contract obligee. R.C. 4113.61(A)(1) and (2). The obligation to pay attorney fees is further ameliorated by consideration of the presence of good faith allegations or defenses. R.C. 4113.61(B)(2)(a). Accordingly, the trial court did not abuse its discretion by not awarding Soloman interest and attorney fees under R.C. 4113.61.

Soloman's fourth assignment of error is overruled.

## VI

Soloman's first and second assignments of error having been sustained, and his remaining assignments of error having been overruled, we reverse the judgment of the trial court and remand the cause for the trial court (1) to determine reasonable expenses, including attorney fees, resulting from Excel's failure to comply with Soloman's discovery requests, and (2) to transfer this action to the Kettering Municipal Court for further proceedings.

Although strict application of logic might suggest that our two-step mandate be performed in reverse order, it would be both unreasonable and impractical to require the Kettering Municipal Court to resolve a claim for expenses based upon a discovery violation that occurred while the case was pending in the Springfield Municipal Court, since the judge of the latter court is in a much better position to evaluate Excel's conduct and its impact on Soloman's trial preparation.

*Judgment accordingly.*

WOLFF and GRADY, JJ., concur.