OPINION
Wild-Fire, Inc. is appealing a judgment of the Clark County Common Pleas Court awarding it $16,733 under the theory of quantum meruit rather than the $48,132.73 which it sought for breach of contract.
Appellees, Laughlin Scanlan, Inc. (hereinafter Laughlin Scanlan) and the individual partners, Eric Laughlin and Brian Scanlan, were the general contractors for the construction of a Holiday Inn Express in London, Ohio. As the general contractor, Laughlin Scanlan sought bids from subcontractors to fulfill the hotel's electrical needs. The lowest bid was Appellant Wild-Fire, Inc (hereinafter "Wild-Fire"), who bid $81,910.00. Eric Laughlin, president of Laughlin Scanlan, testified that originally the hotel was planned to be a Super 8 motel and then the owners decided to make it a Holiday Inn Express. He testified that from the outset the hotel was a design-build project, meaning that they were using a set of stock plans which would need to be altered and he informed all of the bidders of this situation. Additionally, he had received a letter from the electric company, Ohio Edison, stating that the hotel would need three electric services, which he testified that he provided to all of the bidders, including Wild-Fire. Additionally, Mr. Laughlin testified that he had a preconstruction meeting in July of 1996 with Wayne Laughman (hereinafter "Wayne"), a Wild-Fire representative, a representative for Ohio Edison, and other subcontractors in which they discussed the fact that no gas was available at the hotel site and thus it would have to be an all electric hotel and would require three services. Mr. Laughlin's notes referencing Wayne's presence at this preconstruction meeting were admitted at trial. Additionally, Mr. Laughlin testified that when the contract was signed in August of 1996, he again went over with Wayne the need for three electric services and made notes of their discussion and stapled this to the back of the contract after he signed it. Therefore, Laughlin Scanlan assert that Wild-Fire's bid included not one electric service but three.
In contrast, Wayne and Wild-Fire's president, Nancy Shaffer, testified that Wild-Fire's bid was based on the hotel plans provided by Laughlin 
Scanlan, which only showed one electric service for the hotel. Additionally, Wayne testified that he never received the letter from Ohio Edison which stated three electric services were required and that he did not meet a representative of Ohio Edison until after the contract was signed and construction had begun. Both Wayne and Ms. Shaffer testified that they were not informed of the need for two additional electric services until after they had begun construction on the hotel. Therefore, Wild-Fire planned to add these two additional electric services to their price as change orders.
Additionally, Wayne testified that throughout the project either the hotel owner or Brian Scanlan would ask him to add or change services from the original design and bid. The written contract provided that all such change orders had to be in writing and pre-approved before implementing the change. However, Wild-Fire fell into the practice of performing the service and then billing later for the change order. Following this procedure, in February of 1997, three change orders were submitted and approved after the service was performed and Laughlin Scanlan paid for the change order. In March and April, Wild-Fire submitted its remaining twenty three change orders to Laughlin Scanlan. The amount Wild-Fire claimed to be owed was $48,132.73. The majority of this amount stemmed from the additional two electric services which Wild-Fire claimed were change orders and Laughlin Scanlan argued were a part of the original bid. Over the next three months Wild-Fire and Laughlin Scanlan had several meetings to attempt to resolve their dispute. As a result of these meetings, Laughlin Scanlan sent two letters to Wild-Fire which they assert were settlement proposals. One letter offered to pay Wild-Fire $16,733. This figure was based on thirteen change orders which Laughlin Scanlan stated they "approved" but had not paid amounting to $12,068.00,[1] plus $4165.00 to increase Wild-Fire's base bid to the next highest bidder's price who included three electric services and two water heaters, and $500 for a third water heater. Wild-Fire refused this offer and brought suit against Laughlin Scanlan for payment of the change orders.
Wild-Fire sued Laughlin Scanlan under the theories of breach of contract and quantum meruit. A bench trial was held on May 16, 2000 and immediately following the trial, the court awarded judgment to Wild-Fire based on quantum meruit in the amount of $16,733, which it found to be the "value of the services that were rendered to the defendant and were not compensated." A separate hearing was held on Wild-Fire's request for interest and attorney fees on May 19, 2000. On June 7, 2000, Wild-Fire requested findings of fact and conclusions of law. On June 15, 2000, without ruling on Wild-Fire's request for findings of fact and conclusions of law, the trial court filed its judgment entry awarding $16,733 based on quantum meruit and denying interest and attorney fees. Wild-Fire filed this timely appeal., Appellant Wild-Fire raises three assignments of error:
 1. THE TRIAL COURT ERRED BY FAILING TO PROPERLY DETERMINE THE AMOUNT OF DAMAGES AND, FURTHER, BY FAILING TO ISSUE FINDINGS OF FACT AND CONCLUSIONS OF LAW.
 2. THE TRIAL COURT ERRED BY FINDING THAT DAMAGES WERE AWARDED PURSUANT TO A THEORY OF UNJUST ENRICHMENT AND NOT BREACH OF CONTRACT.
 3. THE TRIAL COURT ERRED BY FAILING TO AWARD STATUTORY INTEREST AND ATTORNEY FEES PURSUANT TO OHIO REVISED CODE 4113.61, OHIO'S PROMPT PAY ACT.
A judgment of a trial court will not be reversed on appeal as being against the manifest weight of the evidence if it is supported by some competent, credible evidence going to all of the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus, 8 O.O.3d 261. The appellate court is directed by the presumption that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79. The trier of fact is in the best position to observe witnesses and weigh their credibility. Id.
Appellant's first assignment of error:
Wild-Fire argues that the trial court erred in calculating the damages under the theory of quantum meruit. We agree.
When a court finds that a party has been unjustly enriched by an aggrieved party, the court adopts a legal fiction, quasi contract, to provide the aggrieved party a remedy, which is a claim for quantum meruit. Caras v. Green Green (June 28, 1996), Montgomery App. No. 14943, unreported. Generally, "a claim for unjust enrichment lies whenever a benefit is conferred by plaintiff upon a defendant with knowledge by the defendant of the benefit and retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs. (1998), 128 Ohio App.3d 33, certiorari granted (1998), 83 Ohio St.3d 1434, appeal dismissed (1999), 85 Ohio St.3d 1430, quoting Donovan v. Omega World Travel, Inc. (Oct. 5, 1995), Cuyahoga App. No. 68251, unreported. The court may impose civil liability in a situation where one party retains the benefit from the labors of the other party. Shaw v. J. Pollock Co. (1992), 82 Ohio App.3d 656, 662. In order to remedy this unjust enrichment, "the law implies a promise to pay a reasonable amount for services in the absence of a specific contract." Kraft, supra. Recovery under quantum meruit should be for the value to the Plaintiff of the use of the property or benefit conferred. Id.
However, Ohio law clearly states:
 that an equitable action in quasi contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact. The mere fact that issues exist as to the creation of the contract or the construction of its terms does not alter this rule.
Caras, supra, quoting Ryan v. Rival Manufacturing Co. (Dec. 16, 1981), Hamilton App. No. C-810032, unreported. Thus, unless fraud or illegality occur, a party to an express agreement, which contains a provision governing the allegedly inequitable conduct, may not bring an unjust enrichment claim. Sammarco v. Anthem Ins. Cos., Inc. (1998),131 Ohio App.3d 544, certiorari granted (1999), 85 Ohio St.3d 1446, appeal dismissed (1999), 87 Ohio St.3d 1227.
In the instant action, Wild-Fire argues that the trial court erred in calculating the damages under the theory of quantum meruit and in failing to issue findings of fact and conclusions of law. Initially, Wild-Fire argues that the trial court miscalculated the damages by determining that Wild-Fire's original bid was for three electric services, which Wild-Fire asserts was only for one electric service, and leaving this figure out of the damages award. At trial, Mr. Laughlin testified that he informed Wayne of the need for three electric services even though the drawing only showed one and that on at least two separate occasions he and Wayne discussed the necessary three electric services. Additionally, Laughlin 
Scanlan presented evidence in the form of a letter from the electric company detailing the need for three electric services, which according to Mr. Laughlin's testimony was given to all bidders, and Mr. Laughlin's notes from the meeting where he discussed with Wayne the three electric services and the similar discussion the day the contract was signed. This testimony and documentation is sufficient competent credible evidence to support the trial court's finding that the original bid included three services rather than one.
Thus, having found that the two additional electric services for which Wild-Fire sought relief were included in the original contract, the trial court excluded this amount from the damages under quantum meruit. As stated in Caras and Sammarco, when an express contract covers the subject matter of a quantum meruit claim, the quantum meruit claim must be thrown out. Since the trial court found that three electric services were included in the original contract, the trial court may not award quantum meruit damages for the two electric services which Wild-Fire alleges were additional but the trial court found to be in the original contract. Thus, the trial court properly determined that no damages should be awarded under the theory of quantum meruit for the three electric services.
As to the remaining extras and changes, the trial court awarded $16,733.00 based on quantum meruit, stating that this was the value of the services rendered. The trial court did not give any basis for this figure, even after Wild-Fire submitted a request for findings of fact and conclusions of law. The only evidence presented at trial as to the value of the services rendered was Wild-Fire's invoices presented during Wayne's testimony. The $16,733.00 figure was only mentioned at trial as an amount that Mr. Laughlin had offered as a settlement at one time.
Mr. Laughlin reached the $16,733.00 figure by adding the invoice prices for thirteen of the change orders, 12,068.00; plus the difference between Wild-Fire's bid and the next closest bidder who specified three electric services and two water heaters in its bid, $4165.00; plus $500 for a third water heater. Mr. Laughlin's calculation provided no value for nearly ten extras or changes which had been provided and claimed as change orders. Additionally, Mr. Laughlin's calculation awarded in excess of $4,000 for the additional two electric services, which as discussed above should not be included in the calculation of the damages under a quantum meruit claim because the trial court found it to be included in the express contract. Therefore, we find that the trial court miscalculated the damages on the quantum meruit claim. Rather than taking the $16,733.00 settlement figure, the trial court should have added up the prices on the invoices for the change orders which were not included in the original written contract and awarded that amount. Wild-Fire's first assignment of error is sustained and the judgment is reversed and remanded to the trial court to recalculate the damages on the quantum meruit claim.
As to Wild-Fire's claim that the trial court's judgment entry did not provide sufficient findings of fact and conclusions of law when Wild-Fire had requested such findings, the issue is moot. Since we are remanding to the trial court to recalculate the damages, the trial court will likely provide the necessary reasoning and calculations behind its damage award which was lacking in the original judgment entry.
Appellant's second assignment of error:
Wild-Fire asserts that the trial court erred in finding that no breach of contract claim existed and therefore, awarding damages based on the theory of unjust enrichment rather than breach of contract. We disagree.
"Ordinarily, when there is a written contract, a party cannot pursue the breaching party on the basis of quantum meruit." Burke Assoc., Inc. v. Koinonia Homes, Inc. (1999), 135 Ohio App.3d 683. However, in the instant case, the trial court found that no written contract existed to cover the additional changes and extras provided by Wild-Fire, and instead based its award on quantum meruit.
Wild-Fire asserts that the trial court should have found that the additional changes and extras were change orders under the written contract. The contract between Wild-Fire and Laughlin Scanlan provided that changes or extras in the scope of work would "not proceed until a change order is signed by those of authority." (Plaintiff's exhibit 1). Additionally, the contract provided, "[a]ny alteration or deviation from the above specifications involving extra cost will be executed only upon written orders, and will become an extra charge over and above the estimate." Wild-Fire admitted that it did not follow this procedure, but rather that changes and extras were routinely performed without a change order signed by an authority.
Wild-Fire argues that the trial court should have found that Laughlin 
Scanlan approved the extras orally in the field without a prior written document and that this oral approval constituted a waiver of the written change order requirement in the contract. Although Brian Scanlan testified that Wayne was entitled to rely upon what Mr. Scanlan told him in the field, he clarified that on only two occasions did he orally request work from Wild-Fire and that only one of those two appeared on Wild-Fire's list of extras. In orally requesting such work, Mr. Scanlan assumed Wild-Fire would handle the paperwork for the change orders with Laughlin Scanlan's office. Further he testified that he had no idea at the time that Wild-Fire was performing change orders throughout the project, especially since none of Wild-Fire's periodic payment applications included change orders until the final application.
Also, Mr. Laughlin testified that he knew nothing of these extras until the final application when Wayne stated there were some minor change orders. Mr. Laughlin testified that his understanding of the procedure was that all change orders were to be submitted to him in writing, signed by the owner, and returned, clarifying further that he did not orally request Wild-Fire to perform any change orders. Finally, Mr. Patel, the hotel owner testified that he did not request any change orders. Therefore sufficient evidence existed for the trial court to find that Laughlin Scanlan did not waive the written change order requirement as Mr. Laughlin and Mr. Patel stated that they never orally requested changes and Mr. Scanlan testified that he did so only twice. Thus, competent, credible evidence supported the trial court's finding that the contract required that change orders be submitted in writing and approved by the owners before payment and that since this failed to occur, Laughlin Scanlan's failure to pay for the change orders was not a breach of contract. The second assignment of error is without merit and is overruled.
Appellant's third assignment of error:
Wild-Fire argues that the trial court erred in failing to award Wild-Fire attorney's fees or its request for interest under R.C. 4113.61. We disagree.
Generally, R.C. 4113.61 provides that a contractor must pay a subcontractor on a timely request for payment within ten calendar days of having received payment from the owner. Soloman v. Excel Marketing, Inc. (1996), 114 Ohio App.3d 20. If the contractor fails to pay within ten days, interest begins to accrue and the trial court after considering all of the relevant factors may impose a sanction of attorney fees. Id. "R.C. 4113.61 is based upon the premise that the subcontractor's * * * request for payment is based upon a valid and enforceable contractual claim." Id. R.C. 4113.61 provides that a contractor may withhold amounts "necessary to resolve disputed * * * claims involving the work or labor performed" by the subcontractor. R.C. 4113.61(A)(1); see also Soloman, supra. Additionally, the possible attorney fee sanction may be ameliorated by the presence of good faith allegations or defenses. R.C.4113.61(B)(2)(a); see also Soloman, supra.
In the instant action, Wild-Fire argues that the trial court erred in determining that since the court's award was based on quantum meruit and not breach of contract, R.C. 4113.61 did not apply. Additionally, Wild-Fire argues that the trial court erroneously found that a genuine dispute existed as to what was owed, which also caused R.C. 4113.61 not to apply. As discussed in the previous assignment of error, the trial court's determination that no claim existed under breach of contract theory was not against the manifest weight of the evidence. Pursuant to Soloman, recovery of interest and attorney's fees under R.C. 4113.61
requires a valid and enforceable contract claim, which the trial court found did not exist in the instant action. As a result of this finding, the trial court properly denied the request for attorney fees and interest.
Furthermore, the trial court had competent, credible evidence of a good faith dispute between the parties. Wild-Fire and Laughlin Scanlan each had different interpretations of what was included in the original bid and contract and disagreed on the listed extras as to whether or not Laughlin Scanlan had requested them. Mr. Laughlin and Mr. Patel, the hotel owner, testified that they never orally requested a change order and Mr. Scanlan testified that he had only orally requested one of the items on Wild-Fire's list of extras and changes. This is in marked contrast to Wild-Fire who asserted that over twenty extras and changes had been requested by Laughlin Scanlan or the hotel owner. Moreover, Mr. Laughlin testified that his offer of $16,733 was a settlement offer, not an admission of liability, as Wild-Fire argued. Therefore, sufficient evidence existed for the trial court to determine that a good faith dispute existed between Wild-Fire and Laughlin Scanlan as to the extras and changes. Thus, the trial court correctly denied Wild-Fire's request for interest and attorney's fees upon a finding that a good faith dispute existed between the parties. The third assignment of error is without merit and overruled.
In conclusion, the trial court did not err in determining that the original bid and contract provided for three electric services rather than one electric service, as Wild-Fire alleged. Thus, the trial court did not err in awarding no damages on the theory of quantum meruit for the two electric services which Wild-Fire alleged were change orders but the trial court found to be in the original contract. Additionally, the trial court did not err in determining that because Wild-Fire failed to follow the written procedure for change orders in the contract, no contract existed between the parties as to the changes and extras performed by Wild-Fire and thus, Laughlin Scanlan did not breach a contract when it refused to pay the additional amount. The trial court also properly denied Wild-Fire's claim for prejudgment interest and attorney fees. Finally, the trial court did not err in determining that Wild-Fire could recover under the theory of quantum meruit for the extras and changes it performed that were not included in the contract. However, the trial court did err in the calculation of the quantum meruit damages for the extras and changes not included in the contract between the parties.
The judgment of the trial court is sustained in part and reversed and remanded in part.
 ____________ YOUNG, J.
BROGAN, J. and GRADY, J., concur.
[1] Mr. Laughlin miscalculated this figure when he reached $12,068.00 because the prices actually add up to $ 12,100.64.