[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
Erik Chappell and Kimberly Starr, for appellee/cross-appellant.
William J. Wildenhaus, for appellants/cross-appellees.
This is an appeal and cross-appeal from judgments of the Sylvania Municipal Court. In three separate judgments, the trial court denied the motion of defendants-appellants/cross-appellees ("appellants"), Jeffrey and Sheila Alexander, for a change of venue; denied the motion of the Alexanders for summary judgment and granted the motion for summary judgment of plaintiff-appellee/cross-appellant, Rusk Industries d/b/a Ever Dry Waterproofing ("appellee"); and held that Rusk Industries had failed to prove its damages as a result of appellants' breach of contract. All three judgments are now before this court for our review. From the first two judgments, the Alexanders raise the following assignments of error:
"Assignment of Error I
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING DEFENDANTS [sic] REQUEST FOR A CHANGE OF VENUE!
"Assignment of Error II
 THE TRIAL COURT ERRED AS A MATTER OF LAW GRANTING SUMMARY JUDGMENT TO PLAINTIFF!"
 From the judgment denying its claim for damages, Rusk raises the following assignment of error:
 "I. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S CLAIM FOR LOST PROFITS."
The undisputed facts of this case are as follows. On August 8, 1997, the Alexanders and Rusk entered into a contract for Rusk to provide basement waterproofing services at the Alexanders' home for the agreed upon price of $9,504. The Alexanders' home is located in Ottawa, Putnam County, Ohio. Rusk's principal place of business is located in Sylvania Township, Lucas County, Ohio. Paragraph six of the "Terms and Conditions" listed on the back of the contract provides:
 "Ohio law allows for a three (3) day right of rescission period. Buyer recognizes that after such time substantial production costs will have been incurred by Contractor and any and all costs as a result of cancellations beyond this period will be paid to Contractor by same, see attached notice."
The attached notice to which paragraph six refers is entitled "NOTICE OF CANCELLATION," was dated August 8, 1997 and reads in relevant part:
 "YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN 3 BUSINESS DAYS FROM THE ABOVE DATE.
"* * *
 "TO CANCEL THIS TRANSACTION, MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM, TO Ever-Dry Waterproofing AT 7880 W. Central Ave. Toledo NOT LATER THAN MIDNIGHT OF 8-12-97."
The Alexanders acknowledged receipt of this notice of cancellation by signing the notice.
Terry Dotson is a sales representative for Rusk. Dotson met the Alexanders at their home on August 8, 1997 and reviewed their basement leakage problem. After the Alexanders agreed to hire Rusk to fix the leakage problem, Dotson completed the contract and notice of cancellation on behalf of Rusk. In addition to the contract and notice of cancellation, Dotson presented the Alexanders with a Bank One Property Improvement or Manufactured Home Loan Application dated August 8, 1997 which the Alexanders completed; a three day Notice of Cancellation applicable to the Bank One financing application, also dated August 8, 1997 and signed by the Alexanders; a Release of Credit Information form, which the Alexanders completed; an Optional Credit Insurance Form, which the Alexanders declined; and a Bank One Property Loan Agreement, dated August 8, 1997, which was signed by the Alexanders and created a promissory note payable to Bank One. When Dotson left the Alexanders' home he left with them a copy of the Rusk contract, two copies of the three day notice of cancellation attached to the Rusk contract, and a copy of the three day notice of cancellation applicable to the Bank One financing application. He did not give them copies of the Bank One loan application, the release of credit form or the Optional Credit Insurance Form. It is unclear whether he gave them a copy of the Bank One Property Loan Agreement. Dotson returned to Rusk and gave the completed loan application papers to Lindi Mallory, Rusk's finance manager.
On August 12, 1997, Mallory telephoned Jeffrey Alexander and notified him that their application for a loan with Bank One had not been approved. She then explained that she could apply for an unsecured loan with another bank. She did not return any of the Bank One loan application papers to appellants or mark any of them, particularly the note payable to Bank One, canceled. Mallory then completed loan application papers for National City Bank. Although she completed those papers on August 12, 1997, she dated them August 8, 1997 and indicated on the three-day notice of cancellation that the Alexanders had until midnight on August 12, 1997 to cancel the loan transaction.
On that same day, August 12, 1997, the Alexanders were approved for a loan through National City Bank.
Sometime shortly after August 12, 1997, Dotson returned to the Alexanders' home with the loan papers for financing through National City Bank. The Alexanders questioned Dotson as to why the papers were dated August 8, 1997 and expressed concern about the dating discrepancy. Dotson told them that he had to date the loan papers for the same date as the work contract. The Alexanders then signed the documents.
Sometime after signing the National City Bank loan application papers, the Alexanders saw a basement which had been repaired by Rusk and were not satisfied with the look of the job. Thereafter, when Rusk contacted them to schedule the waterproofing job, the Alexanders informed Rusk that they did not want Rusk to perform the job. In their depositions, both Jeffrey and Sheila Alexander testified that the only reason they did not want to complete the contract with Rusk was the look of the job previously performed by Rusk and that the financial aspects of the deal had nothing to do with their decision.
On November 13, 1997, Rusk filed suit against the Alexanders in the Sylvania Municipal Court to recover $3,168 in lost profits occasioned by the Alexanders' breach of contract. The Alexanders responded with an answer and counterclaim. The counterclaim alleged three separate violations of the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq. ("CSPA"). First, the Alexanders alleged that Rusk failed to properly complete and left critical blanks in the Bank One loan papers in violation of R.C. 1345.02. Second, the Alexanders alleged that Rusk caused them to sign National City Bank loan documents on which the date of the documents was falsified, thereby creating two separate promissory notes (one to Bank One and one to National City Bank) in violation of R.C. 1345.02. Finally, the Alexanders alleged that the Notice of Cancellation attached to the National City Bank loan documents was backdated and therefore failed to confer a right of cancellation, in violation of R.C. 1345.02.
In addition to filing a counterclaim, the Alexanders filed a motion for a change of venue. The Alexanders asserted that Sylvania Municipal Court was not a proper venue under Civ.R. 3(B) and that because the contract that forms the basis of Rusk's complaint was signed in Putnam County, that was the proper venue for this action. Rusk responded with a brief in opposition which asserted that venue was proper in the Sylvania Municipal Court pursuant to Civ.R. 3(B)(6). On February 10, 1998, the trial court filed a judgment entry denying the Alexanders' motion for a change of venue. The court held that venue was proper in the Sylvania Municipal Court pursuant to Civ.R. 3(B)(6), because the breach alleged was the failure of the Alexanders to tender payment on the contract and the payment was due at Rusk's principal place of business, which was in Sylvania Township, Lucas County, Ohio.
Subsequently, Rusk filed a motion for summary judgment on its claim for breach of contract and the Alexanders filed a motion for summary judgment on their claims for violations of the CSPA. In support of Rusk's motion, the court was presented with the affidavit of Kenneth Rusk and the depositions of Jeffrey and Sheila Alexander. The Alexanders supported their motion with the depositions of Lindi Mallory, Terry Dotson, and Craig Dixon, Rusk's titles expediter.
On November 24, 1998, the trial court issued an opinion and judgment entry granting Rusk summary judgment on the Alexanders' claims for violations of the CSPA, denying the Alexanders summary judgment on those same claims and granting Rusk summary judgment on the issue of liability only on its claim for breach of contract. The court, however, continued the matter for a trial on the issue of damages on the breach of contract claim.
On November 19, 1999, the case proceeded to a trial on the issue of damages. The sole witness to testify at the trial was Tim Despoth, the production manager for Rusk. Despoth testified regarding a document that he had prepared on the day of trial listing estimates for material and labor costs to complete the Alexander job. He admitted, however, that this job cost breakdown was based on then current prices, not the prices applicable to a job completed in 1997. He also admitted that he never saw the Alexanders' house and based the estimate on the products that were typically used to complete a basement waterproofing job. On June 20, 2001, the trial court issued a judgment entry in which it found that Rusk had failed to prove any damages attendant to the Alexanders' breach of contract. Specifically, the court found that Despoth's estimates were based on the present day costs to complete the job, not the 1997 costs, and that there was no evidence that Rusk purchased any materials to complete the Alexander job. The court further found that there was no evidence that Rusk lost any work time because of the Alexanders' cancellation of the job or that any crews had to shut down because of the cancellation. Based on these findings of fact the court determined that Rusk had failed to prove its lost profits with reasonable certainty and, therefore, denied its claim for damages.
We will first address the Alexanders' assignments of error. In their first assignment of error, the Alexanders challenge the trial court's ruling denying their motion for a change of venue. The Alexanders assert that the trial court was required to grant their motion pursuant to the CSPA and the Fair Debt Collection Practices Act. That is, they contend that venue in this case was proper in Putnam County because that is the county in which the consumers reside and in which the contract was signed. Rusk counters that venue was proper in Lucas County pursuant to Civ.R. 3(B)(6).
Venue is described as that locality where a suit should be heard.Morrison v. Steiner (1972), 32 Ohio St.2d 86, paragraph one of the syllabus. It should not be confused with the subject matter jurisdiction of a court which "connotes the power to hear and decide a case upon its merits." Id. Civ.R. 3(B), which governs where venue is proper, states in pertinent part:
 "Any action may be venued, commenced, and decided in any court in any county. * * * Proper venue lies in any one or more of the following counties:
"(1) The county in which the defendant resides;
"* * *
 "(6) The county in which all or part of the claim for relief arose[.]"
The Supreme Court of Ohio has held that "[t]he first nine provisions of Civ.R. 3(B) are on equal status, and any court specified therein may be a proper and initial place of venue." Morrison, supra, at 89. "Plaintiff has a choice where the action will be brought if any of the counties specified in [Civ.R.] 3(B)(1) through (9) are a proper forum under the facts of the case." Varketta v. Gen. Motors Corp. (1973),34 Ohio App.2d 1, 6. Relative to Civ.R. 3(B)(6), "[i]n an action alleging breach of contract, the cause of action arises where the breach took place." Soloman v. Excel Marketing, Inc. (1996), 114 Ohio App.3d 20,25. "Various jurisdictions have held that the refusal to pay money due on a contract results in a breach of that contract at the place where the money was to be paid and that, absent an express agreement to the contrary, proper venue is presumed to lie in the county in which the payee's place of business is located." Id. at 25-26, citing Lorenz Equip.Co. v. Ultra Builders, Inc. (Feb. 23, 1993), Franklin App. No. 92AP-1445; Janet's Reporting Video Serv. v. Rauchman (May 29, 1990), Butler App. No. CA89-10-150; Thompson v. G D Transport, Inc. (Aug. 22, 1989), Gallia App. No. 88-CA-12.
In its complaint, Rusk alleged that upon the Alexanders' late rescission of the contract, Rusk gave them the option of having Rusk complete the job or paying Rusk its lost profit, designated as one-third of the contract price. The Alexanders refused. Accordingly, Rusk alleged that the Alexanders had breached their contract with Rusk and sought $3,168 in lost profits. Pursuant to the case law set forth above, venue was proper in the Sylvania Municipal Court. That jurisdiction encompasses Rusk's principal place of business and where payment was allegedly due under the contract. The trial court therefore did not err in denying the Alexanders' motion for a change of venue.
The Alexanders allege, however, that because the transaction that was the basis for the breach of contract action was a home solicitation sale within the meaning of R.C. 1345.21, the transaction falls within the CSPA, R.C. 1345.01 et seq., and was required to be filed in Putnam County, the county where the home solicitation sale occurred and in which they live. In support of their argument, the Alexanders cite the case ofCelebrezze v. United Research, Inc. (1984), 19 Ohio App.3d 49, in which the Summit County Court of Appeals held that it is an unfair or deceptive consumer sales practice for a "supplier" to regularly file collection suits as a matter of choice in a jurisdiction other than where the consumer resides or signed the contract in question. In that case, however, the supplier filed complaints against some fifty-eight consumer-debtors in a jurisdiction in which none of the consumers resided. The court in United Research held that in that situation, the very act of filing the lawsuits themselves was an unfair or deceptive consumer sales practice.
In the present case, there is no evidence that Rusk makes a practice of filing collection suits in a forum that is unfair to consumers.
The Alexanders further argue that Putnam County was the proper venue in this case under the Fair Debt Collection Practices Act, Section 1692 et seq., Title 15, U.S. Code ("FDCPA"). That act has a specific provision regarding venue that reads:
 "(a) Venue. Any debt collector who brings any legal action on a debt against any consumer shall —
 "(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or
 "(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity —
 "(A) in which such consumer signed the contract sued upon; or
 "(B) in which such consumer resides at the commencement of the action." Section 1692i, Title 15, U.S. Code.
The FDCPA, however, prohibits debt collectors from using abusive tactics while collecting debts for others. Huntington National Bank v.Metzenbaum (Nov. 12, 1998), Cuyahoga App. No. 73723. In pertinent part, the FDCPA defines a "debt collector" as "* * * any person * * * who regularly collects or attempts to collect * * * debts owed or due or asserted to be owed or due another." Section 1692a(6), Title 15, U.S. Code. "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors." Perry v. Stewart Title Co. (C.A.5, 1985), 756 F.2d 1197,1208.
In the present case, Rusk was attempting to collect a debt that was allegedly owed to it. Accordingly, it was not a "debt collector" as that term is used in the FDCPA, and the venue provisions of the FDCPA do not apply to the venue question in this case.
The trial court, therefore, did not err in denying the Alexanders' motion for a change of venue and the Alexanders' first assignment of error is not well-taken.
In their second assignment of error, the Alexanders assert that the trial court erred in granting Rusk summary judgment on the Alexanders' claims for violations of the CSPA. The Alexanders allege that Rusk violated the CSPA by failing to provide the Alexanders with copies of loan documents that Rusk had them sign, by leaving blanks in loan papers that Rusk had them sign, by backdating loan papers, and by failing to return a promissory note payable to Bank One to the Alexanders after Bank One denied them financing.
It is undisputed that Rusk's sale of basement waterproofing services to the Alexanders was a home solicitation sale within the meaning of R.C.1345.21(A). Accordingly, the failure to comply with sections 1345.21 to1345.27 of the Revised Code, the Home Solicitation Sales Act, constitutes a deceptive act or practice in connection with a consumer transaction in violation of R.C. 1345.02. R.C. 1345.28. At the heart of the Home Solicitation Sales Act is the provision granting the buyer "the right to cancel a home solicitation sale until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase." R.C. 1345.22. This notice of the buyer's right to cancel, "must appear on all notes or other evidence of indebtedness given pursuant to any home solicitation sale." Id. In addition, the home solicitation sale must be evidenced by a written agreement which contains the name and address of the seller. R.C. 1345.23(A). The seller must further present the written agreement to the buyer and obtain the buyer's signature on it. Id. "The writing shall state the date on which the buyer actually signs." Id. R.C. 1345.23(B) then sets forth the requirements of the three-day notice of cancellation. First, a statement conferring the right must appear clearly and conspicuously on the copy of the written agreement left with the buyer. The seller must then attach, in duplicate, a form captioned "notice of cancellation" to the contract. That notice of cancellation must contain the information and statements that are set forth in the sample notice of cancellation provided in R.C.1345.23(B)(2). Before providing the buyer with the copies of the notice of cancellation, the seller must complete the notice "by entering the name of the seller, the address of the seller's place of business, the date of the transaction which is the date the buyer signed the contract and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation." R.C. 1345.23(B)(3). Until the seller has delivered the properly executed notice of cancellation to the seller, the buyer may cancel the home solicitation sale. That is, the three-day notice of cancellation period does not begin to run until the seller complies with R.C. 1345.23(A) and (B). R.C. 1345.23(C).
As we stated above, the seller's failure to comply with the provisions of the Home Sales Solicitation Act constitutes a deceptive act or practice in connection with a consumer transaction in violation of R.C.1345.02. As such, where a seller has violated any of the provisions of the Home Sales Solicitation Act, the buyer has a cause of action and is entitled to rescind the transaction or recover his damages. R.C.1345.09(A). In addition, where the violation was an act or practice declared to be deceptive or unconscionable by the Attorney General through a rule adopted pursuant to R.C. 1345.05(B)(2), or determined by a court of this state to violate R.C. 1345.02 or 1345.03 and made available for public inspection by inclusion in the Attorney General's case list, the buyer "may rescind the transaction or recover * * * three times the amount of his actual damages or two hundred dollars, whichever is greater * * *." R.C. 1345.09(B).
The record is undisputed that Rusk left blanks in various financing papers that it prepared for the Alexanders, failed to provide the Alexanders with copies of financing papers that it required the Alexanders to sign and backdated the notices of cancellation attached to the National City Bank financing papers. Ohio Adm. Code 109:4-3-05(D) provides that "[i]n any consumer transaction involving the performance of any repair or service it shall be a deceptive act or practice for a supplier to: * * * (15) Fail, at the time of the signing or initialing of any document by a consumer, to provide the consumer with a copy of the document." In addition, the Eleventh District Court of Appeals has held that the backdating of a retail installment contract is a deceptive act in violation of R.C. 1345.02. Bramley's Water Conditioning v. Hagen
(1985), 27 Ohio App.3d 300.
Nevertheless, the trial court held that because the defects in the financing papers played no part in the Alexanders' decision to rescind the contract for waterproofing services, the defects did not amount to violations of the CSPA. In reaching this conclusion, the trial court relied on Brown v. Bredenbeck (1975), 2 Ohio Op.3d 286, from the Franklin County Court of Common Pleas, and Smaldino v. Larsick (1993),90 Ohio App.3d 691, from the Eleventh District Court of Appeals. InBrown, the court held that an act or practice is deceptive and therefore in violation of the CSPA if "* * * the supplier does or says something, regardless of intent, which has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts * * *." This court has previously relied on Brown for that very same proposition.Frey v. Vin Devers, Inc. (1992), 80 Ohio App.3d 1, 6. In Smaldino, the court held that a furnace installer's failure to fill in the model number or serial number on a warranty card did not violate R.C. 1345.02(B)(10) because there was no false representation. In addition, we find the case of Bierlein v. Bernie's Motor Sales, Inc. (June 12, 1986), Montgomery App. No. 9590, to be on point. In that case, the plaintiff asserted that the defendant committed a deceptive act by tendering a receipt for the deposit on a used car which failed to include all of the pertinent information required by the administrative rules. The plaintiff, however, sought damages and/or rescission of the sale of the used car because of mechanical difficulties she experienced with the car after the sale. The court held that because the omissions in the deposit receipt were never a "bone of contention" between the parties during the course of their transaction but were instead an "afterthought in contemplation of litigation" the defendant had not committed a deceptive act within the meaning of the CSPA. In each of these cases the alleged deceptive practice did not induce the consumer to enter into the transaction with the seller.
In light of these cases, we conclude that the trial court did not err in granting Rusk summary judgment on the Alexanders' claims. Despite the undisputed evidence that Rusk technically violated the CSPA, those violations had no bearing on the Alexanders' decision to enter into the contract for waterproofing services or to rescind the contract. Indeed, those violations were only alleged after Rusk brought suit for breach of contract. Moreover, the CSPA violations were for defects in the financing papers, not in the contract between the parties for waterproofing services. Nowhere in the parties' contract was it stated that the job was contingent upon the Alexanders obtaining financing. Although we recognize that the CSPA is to be liberally construed in favor of the consumer, we are in further agreement with the statement by theBierlein court that "the Consumer Sales Practices Act was not promulgated as a panacea by which any consumer would be able to avoid unpleasant contractual obligations." Accordingly, the trial court did not err in granting Rusk summary judgment on the Alexanders' counterclaims and the Alexanders' second assignment of error is not well-taken.
We will now address Rusk's sole assignment of error. Rusk contends that the trial court erred in failing to award it lost profits upon the Alexanders' breach of contract.
In the proceedings below, the trial court held a hearing on the issue of damages at which Rusk's production manager testified. In its decision denying Rusk's claim, the court summarized this testimony as follows:
 "Plaintiff's production manager testified that he was familiar with this job, that such a job is usually scheduled 1-4 weeks after financing, that a backlog existed in Plaintiff's work when this contract was made, and that Plaintiff would have completed the job that year except that Defendants cancelled it. He identified Exhibit 2, a job cost breakdown of material and labor he prepared on the project showing $4,927.60 of Plaintiff's future out-of-pocket expenses to do the job.
 "He testified on cross-examination that he prepared Exhibit 2 on the day of trial, at November, 1999 costs, without ever having been to Defendants' premises. He testified that he had not investigated the 1997 costs relevant to performance of the agreement in that year. He estimated what materials would have been needed more than two years before to do the work, assuming what Plaintiff would have done at that time and estimating quantities of materials. There was no evidence that Plaintiff purchased any pumps, pipe, tile stone or other materials for this job.
 "Plaintiff's production manager testified that its work crews were fully occupied on other contracted work from August, 1997 through October, 1997 with no crew shutdowns nor any lulls in their work assignments and utilization. He was unable to testify whether any actual work days were lost by its work crews during the year 1997. No allocated fixed overhead or administrative expenses or costs were attributed to this job by Plaintiff. There was no testimony that Plaintiff lost any work time because of Defendant's cancellation of this job."
Based on this testimony, the court concluded that Rusk had failed to prove that it incurred any production costs as a result of the Alexanders' cancellation of the contract and, accordingly, had failed to prove lost profits with reasonable certainty.
It is well-established that lost profits may be recovered by a plaintiff in a breach of contract action if "(1) profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits is the probable result of the breach of contract, and (3) the profits are not remote and speculative and may be shown with reasonable certainty." Charles R. Combs Trucking, Inc. v. InternationalHarvester Co. (1984), 12 Ohio St.3d 241, paragraph two of the syllabus. With respect to the third prong of that test, "the amount of the lost profits, as well as their existence, must be demonstrated with reasonable certainty." Gahanna v. Eastgate Properties, Inc. (1988), 36 Ohio St.3d 65, syllabus.
It is clear from the record below that Rusk did not establish the amount of its lost profits with reasonable certainty. In particular, Rusk did not establish its production costs for a 1997 job. Without this figure, the amount of Rusk's lost profits from the Alexanders' cancellation of the contract is speculative at best. Accordingly, the trial court did not err in denying Rusk's claim for lost profits and Rusk's sole assignment of error is not well-taken.
On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgments of the Sylvania Municipal Court are affirmed. The parties are ordered to split the court costs of this appeal.
 JUDGMENTS AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J., Richard W. Knepper, J., Mark L. Pietrykowski,P.J., JUDGES CONCUR.