## Glover v. Glover
[Cite as 4 AOA 532]

Case No. CA89-09-015
Brown County, (12th)
Decided June 11, 1990

Cassity, Kelly & Wallace, John B. Houser and Richard L. Goettke, 221 S. High Street, Mt. Orab, Ohio 45154, for Plaintiff-Appellee.

Barbeau & Hake, Carol C. Hake, 120 N. Market Street, Batavia, Ohio 45103, for Defendant-Appellant.

JONES, P.J.

This case involves an appeal of a divorce decree rendered in the Brown County Court of Common Pleas. Plaintiff-appellee, Bruce N. Glover, and defendant-appellant, Rita Lynn Glover, were married on July 31, 1976. Two male children were born issue of the marriage and were ages eight and six, respectively, as of the time of the divorce. Following their marriage, the parties resided in California until 1979, when they moved to Brown County, Ohio. The parties purchased a home in Mt. Orab, part of which appellee used as an office for his insurance business.

Marital problems between the parties resulted in the filing of a complaint for divorce in 1987. The parties dismissed this action upon reconciling and agreeing, at appellant's request, to move closer to a metropolitan area. Subsequently, they purchased a condominium in Clermont County and moved there in the spring of 1988. The couple retained title to their Brown County home and made tentative plans to rent the premises.

In August 1988, while appellant and the children were visiting her relatives in California, appellee filed a complaint for divorce in Brown County accompanied by an affidavit in which he asserted the couple's children had lived in Brown

County since their births and that he should be granted temporary custody of the children since appellant had "engaged in conduct in her home life-style that would be considered detrimental to the welfare of the minor children."

The trial court granted an *ex parte* order awarding temporary custody of the children to appellee. Upon appellant's return from California, appellee immediately served her with a copy of the complaint and temporary order and took custody of the children. Appellant subsequently filed an answer and counterclaim for divorce. She also filed a motion for a change of venue to Clermont County which the trial court denied.

The trial court conducted a hearing on all contested matters. In a September 15, 1989 opinion and judgment entry, the trial court granted appellant a divorce on her counterclaim, divided the parties' marital property, and awarded appellee custody of the children.

In a timely appeal, appellant submits the following assignments of error for review:

### First Assignment of Error

"The trial court erred to the prejudice of the defendant-appellant in not granting a change of venue."

### Second Assignment of Error

"The trial court erred to the prejudice of the defendant-appellant in awarding temporary custody to the plaintiff-appellee based on an improper affidavit while the parties were residing together."

### Third Assignment of Error

"The trial court abused its discretion in awarding custody of the minor children to plaintiff-appellee contrary to the manifest weight of the evidence and the best interest of the child."

### Fourth Assignment of Error

"The trial court erred in arbitrarily reducing the value of the business by more than the debt owed."

In her first assignment of error, appellant argues that the trial court erroneously denied her motion for a change of venue to Clermont County. According to appellant, Clermont County is the proper venue for the divorce action under Civ. R. 3.

Venue is a procedural matter and connotes the locality where the suit should be heard. *Morrison* v. *Steiner* (1972), 32 Ohio St. 2d 86, paragraph one of the syllabus. Civ. R. 3(B) provides in part, as follows:

"Any action may be venued, commenced and decided in any court in any county. * * * Proper venue lies in any one or more of the following counties:

"(1) The county in which the defendant resides;

"* * *

"(3) A county in which the defendant conducted activity which gave rise to the claim for relief;

"* * *

"(9) In actions for divorce, annulment or for alimony in the county in which the plaintiff is and has been a resident for at least ninety days immediately preceding the filing of the complaint;

"(10) If there is no available forum in subsections (1) through (9) of this subdivision, in the county in which the plaintiff resides; has his principal place of business or regularly and systematically conducts business activity;

"* * *"

The first nine provisions of Civ. R. 3(B) are on an equal status, and any court specified therein may be a proper and initial place of venue. *Morrison, supra.* Such applies in domestic relations actions as well. *Wise* v. *Wise* (1983), 8 Ohio App. 3d 243. Thus, where proper jurisdictional requirements are met, a divorce action may be brought in the county in which the defendant resides, as well as the county in which the claim for relief arose, or the county in which the plaintiff has resided for ninety days immediately preceding the filing of the complaint. *Fuller* v. *Fuller* (1972), 32 Ohio App. 2d 303.

It is readily apparent that Civ. R. 3(B)(9) cannot provide the basis for venue in Brown County. Obviously, appellee had not been a resident of Brown County for at least ninety days immediately preceding the filing of the complaint. The couple had moved to Clermont County, had processed change of address forms, and had planned to rent their Brown County residence. Thus, under the provisions of Civ. R. 3(B)(1) through (9), venue will lie in Brown County only if it is the county in which appellant resides or is the county in which appellant conducted activity which gave rise to the claim for relief. It is this latter basis upon which venue was predicated in Brown County.

According to appellee, the conduct which gave rise to his claim for relief was appellant's alleged drug use and extramarital affairs. Appellant did not deny that at one time she used drugs and had had an affair earlier in the marriage. There is nothing to demonstrate, however, whether this alleged conduct occurred in Brown,

Clermont, or for that matter, any other county in Ohio. These grounds are rather vague and general. There is, however, one fact which is specific and known without a question of doubt, namely, that appellant resided in Clermont County at the time the action was filed.

Although the first nine provisions of Civ. R. 3(B) are on an equal status, we believe that within these provisions, the specific should take precedence over the general. Normally, venue is not a contested issue in a domestic relations action since most proceedings of this nature are venued pursuant to Civ. R. (B)(9). However, in those rare situations where Civ. R. 3 (B)(9) does not apply, we believe it is preferable that venue be determined under the more specific, rather than general, provisions of Civ. R.3(B).

For these reasons, we accordingly conclude that appellant's motion for a change of venue should have been granted. The first assignment of error is well-taken and is hereby sustained.

Appellant's second and third assignments of error focus upon the trial court's temporary and permanent custody awards, respectively. The significance of the temporary order is somewhat diminished by the subsequent permanent custody order incorporated into the final divorce decree.[1] By its nature, an interlocutory custody order is temporary and subject to modification upon entry of the final divorce decree. A party may contest a temporary custody order by either filing counter affidavits within fourteen days of the order or a motion to modify within twenty-eight days of the temporary order. See *Davis* v. *Davis* (1983), 12 Ohio App. 3d 38. In the case at bar, appellant did neither. Appellant did not file counter affidavits in which she could have challenged appellee's assertions that the children resided in Brown County and that she engaged in conduct which was detrimental to the children's welfare. Although appellant filed a motion for a change of temporary custody, she did not file the motion until nearly three months after the court awarded temporary custody to appellee.

Inasmuch as appellant did not use the proper procedural channels for challenging the *ex parte* custody order, technically we cannot say that the lower court erred in granting temporary custody to appellee. Furthermore, since the final custody provision of the divorce decree is identical to the temporary order in that custody was granted to appellee, the propriety of the temporary order can be addressed in our consideration of the final custody order.

Appellant's third assignment of error challenges the permanent custody award as being against the manifest weight of the evidence and constituting an abuse of discretion. Specifically, appellant submits that the trial court failed to consider the statutory factors of R.C. 3109.04(C) in fashioning its award and by failing award custody to appellant as the children's primary caretaker.

Under R.C. 3109.04, a domestic relations court will decide to whom the care, custody and control of minor children should be awarded, giving paramount consideration to the best interest of the children. *Birch* v. *Birch* (1984), 11 Ohio St. 3d 85; *Charles* v. *Charles* (1985), 23 Ohio App. 3d 109. Such a determination requires the court to consider all relevant factors including those enumerated in R. C. 3109.04(C)(1) through (5). These factors include the following:

"(1) The wishes of the child's parents regarding his custody;

"(2) The wishes of the child regarding his custody if he is eleven years of age or older;

"(3) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;

"(4) The child's adjustment to his home, school, and community;

"(5) The mental and physical health of all persons involved in the situation."

Although not specifically listed in R.C. 3109.04(C), the role of the child's primary caretaker is a factor warranting consideration in evaluating the child's interactions and interrelationships with parents. *Thompson* v. *Thompson* (1987), 31 Ohio App. 3d 254. Thus, we need not independently address appellant's second issue inasmuch as the role of the primary caretaker will be given due consideration in our determination of whether the permanent custody award reflects an abuse of discretion relative to the children's best interest.

While the trial court has considerable discretion in fashioning a custody award, its discretion is not absolute and is subject to reversal upon a showing of abuse. *Miller* v. *Miller* (1988), 37 Ohio St. 3d 71. In considering the Glover children's statutorily defined best interest, it is readily apparent that both parents desire custody, R.C. 3109.04(C)(1), while the custodial preferences of the children, both of whom are under the age of eleven, are not "relevant" within the meaning of the statute. R.C. 3109.04(C)(2).

Both parties submitted evidence regarding their roles as the children's caretakers. See *In re Maxwell* (1982), 8 Ohio App. 3d 302, 305. The trial court did not specify which of the parties assumed the primary responsibility for the children's care. Our review of the record leads us to conclude, however, that appellant performed the role of primary caretaker for the children and the trial court abused its discretion by failing to consider the importance of this factor.

The trial court placed great weight on the recommendations of Dr. Cynthia Dember, a court-appointed clinical psychologist who examined both parties and the children. According to Dember, both parties had personality characteristics which interfered with their abilities to provide "optimal parenting." This led Dember to initially recommend joint custody. In the alternative, she recommended that appellee be granted custody because he was "less absorbed in his own problems" and had a "more practical, realistic orientation to day-to-day situations." Dember also testified that the older child had become accustomed to his school environment in Brown County while developing friendships and social relationships at appellant's residence in Clermont County. See R.C. 3109.04(C)(4).

In considering the children's interrelationships with the parties and the mental physical health of all persons involved in the situation, we must now confront and address an issue raised by appellant, namely, appellee's sexual orientation and its relationship to and effect upon the children's best interest. Appellee admitted he is bisexual, a term which he believes applies to ninety per cent of the population. He further admitted having a homosexual encounter "almost seven years ago" with a man whom appellee saw as recently as a few weeks prior to the hearing and still sees two to four times a year. A male acquaintance whom appellant dated in college testified that appellee wrote him a "love letter." Appellee testified that he also suggested group sex between himself, appellant, and this same individual.

Appellee also testified that he would not discuss his sexual preferences with his children until the boys raised the subject. Appellee saw no problems resulting from his sexual orientation since he perceived the people of Brown County as "enlightened." He believed neither his associates nor the children's schoolmates would make an issue of the subject.

Dr. Dember testified that appellee's sexual preferences presented no immediate danger to the children's welfare. Although studies showed that children raised by lesbian mothers were not affected by the custodial parent's sexual preference, Dember admitted no such research was available for male children raised by homosexual fathers. Dember acknowledged her lack of prior experience in custody determinations, and while recognizing that some locales were more tolerant of homosexuality than others, she and appellee did not discuss his residence in a rural, farming community. Based upon an exhibit the older child produced on his personal computer, appellant expressed her concerns about suspected abuse or inappropriate sexual behavior which possibly involved an acquaintance of appellee.

The Ohio Supreme Court recently addressed a comparable issue when it held, as a matter of law, that a single adult male is not prohibited from adopting a child simply because the adult is a homosexual. *In re: Adoption of Charles B* (1990), 50 Ohio St. 3d 88. In that case, the court recognized that the standard for determining each adoption case under R.C. 3107.14 is the child's best interest, the same standard which applies for custody determinations under R.C. 3109.04. In considering questions concerning the custody or adoption of children under this standard, "* * * trial courts must make decisions on the facts of each individual case." *Id.* at 91. In *Charles B,* the child was an eight-year-old who suffered from leukemia, a low IQ and speech disorders, possible brain damage from fetal alcohol syndrome, and deficits in fine and gross motor skills. These problems made the child less adoptable than other children his age and the county department of human services was unable to find a suitable family willing to adopt the child.

The adult petitioner in *Charles B* was a psychological counselor who worked with and counseled the child. The petitioner developed a close relationship both professionally and personally with the child prior to filing his petition. In affirming the trial court's decision to place the child with the petitioner for adoption, the supreme court observed that the petitioner had the ability to parent, was well-qualified to meet the child's special needs, had made plans for the child's medical and educational needs, was able to discipline the child when necessary, and had accepted the child as he was. In addition, the court noted the total absence of any evidence in the record indicating the adoption was not in the child's best interest.

Although not specifically mentioned in the supreme court's decision, a relevant factor in that case was the total lack of any viable alternatives to the petitioner's adoption. It obviously could not be said that the proposed adoption was against the child's best interest when the only alternative to adoption was permanent placement with the county and a future consisting of repeated movements between foster homes and a total lack of constancy in the child's life.

In the case at bar, neither party is without shortcomings. As noted in the record, each experiences difficulties which could hinder their abilities to parent the children. Both parties have histories of past drug use and there was evidence that appellee had used marijuana as recently as three months prior to the hearing. Dr. Dember also noted her concern over "an acceptance of manipulativeness and implicit dishonesty in both boys – and perhaps their father – that is disquieting."

Unlike the situation in *Charles B*, where no alternative to adoption was in the child's best interest, there is a viable alternative in the case at bar, namely, an award of custody to appellant. Given the totality of the circumstances presented by the case at bar, we find, in light of all relevant factors including those enumerated in R.C. 3109.04(C), that the best interest of the children warrant a custody award to appellant. We accordingly conclude that the trial court's custody award constituted an abuse of discretion. Appellant's third assignment of error is hereby sustained; the second assignment of error is, however, overruled.

Appellant's final assignment of error challenges the trial court's property division. Appellee's insurance business was appraised at a value of $79,000 with an outstanding debt of $4,500. The trial court awarded appellant one-half of the value of the business less the outstanding debt which it valued at $35,000. Appellant argues that the net value of the business is $74,500 and that her one-half interest should be $37,250, or $2,250 more than that awarded by the trial court.

Essentially, appellant argues that the trial court's property division constitutes an abuse of discretion since it was unequal. A trial court's ultimate objective is to fairly and equitably divide the parties' marital property. Although a potentially equal division should be the starting point, it has been held that a property division need not be equal to be equitable, and an unequal property division, standing alone, is not an abuse of discretion. *Kaechele* v. *Kaechele* (1988), 35 Ohio St. 3d 93. In reviewing the equitable nature of the property division, we must determine whether the trial court abused its discretion. *Worthington* v. *Worthington* (1986), 21 Ohio St. 3d 73. Upon considering the property division in its entirety, we find that the trial court's division of appellee's insurance business was not unreasonable, arbitrary or unconscionable and did not constitute an abuse of discretion.

Appellant's fourth assignment of error is hereby overruled.

*Judgment affirmed in part,*
*reversed in part, and*
*cause remanded.*

YOUNG, J., concurs.
HENDRICKSON, J., concurs in judgment only.

---

[1] It is appellant's theory that appellee filed the divorce action in Brown rather than Clermont County because the Clermont County Court of Common Pleas Local Rules would not have permitted appellee to obtain an *ex parte* custody order given the facts herein.