DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant/cross-appellee, Frank P. DeRosa ("appellant"), appeals from an entry of summary judgment in favor of appellees/cross-appellants, Elliott Leveling, Inc. and A-1 Concrete Leveling, Inc. ("appellee").[1] In addition, appellee has filed a cross-assignment of error pertaining to the issue of venue. For the reasons that follow, we *Page 2 
reverse the trial court's judgment with respect to the entry of summary judgment, and affirm with respect to the issue of venue.
 {¶ 2} Appellant, a resident of Toledo, Lucas County, Ohio is the owner of certain real estate located at 17650 West River Road, Bowling Green, Wood County, Ohio. On July 22, 2002, appellant entered into a contract with appellee to perform foundation repair work upon a new home that had been constructed on the West River Road property. The subject repair work involved excavation around the rear perimeter of the home to expose the foundation, and the installation of helical pilings and tiebacks to lift and stabilize the structure. The total cost of the project was estimated at $ 76,150.
 {¶ 3} Regarding the results that appellant could expect from the subject repair work, the damage that might be caused in the performance of those repairs, and appellee's liability for any such damage, the written contract relevantly provides:
 {¶ 4} "Exact realignment: Every effort will be made to lift the structure back to its original position but Elliott Leveling Inc. cannot guarantee these results due to the condition of the structure. Ideally, the foundation will move back to its proper position but there is a possibility that only a partial correction will occur or that in a worse [sic] case scenario, the structure will only allow stabilization to retard further settling.
 {¶ 5} "Structural damage: As we are attempting to lift a structure back to its proper position that has settled over a period of time, some damage could occur. Although this is not very common, Elliott Leveling Inc. is not responsible for any and all *Page 3 
damages including, but not limited to: cracks in foundation, interior cracking due to lifting or carpentry work to realign windows and doors. Owner is responsible for damage that occurs to roof and any cost to minimize damage.
 {¶ 6} "* * *
 {¶ 7} "WARRANTY EXCLUSIONS:
 {¶ 8} "Elliott Leveling, Inc. shall not be liable for incidental or consequential damages including, but not limited to: damage to concrete, masonry brick and mortar, drywall, paint, electrical, plumbing, furnishings and landscaping. * * *"
 {¶ 9} According to appellant, the foundation repair work that was rendered by appellee was incompetently performed and, ultimately, unsuccessful.
 {¶ 10} On April 5, 2005, appellant filed the instant action against appellee, setting forth claims for, inter alia, breach of contract; negligence; violations of the Ohio Consumer Sales Practices Act; breach of warranty; and misrepresentation and fraud.
 {¶ 11} On October 6, 2006, appellee moved for summary judgment, arguing that the terms of its contract with appellant released appellee from responsibility for appellant's claims. The trial court granted appellee's motion for summary judgment, and it is from this judgment that appellant currently appeals. In this appeal, appellant raises the following assignments of error:
 {¶ 12} I. "THE MOTION OF THE APPELLEE'S [sic] FOR SUMMARY JUDGMENT BASED UPON THE EXCULPATION CLAUSE CONTAINED WITHIN *Page 4 
THE CONSTRUCTION CONTRACT ENTERED INTO BETWEEN THE APPELLANT AND THE APPELLEE WAS GRANTED IN ERROR BY THE TRIAL COURT, IN THAT A GENUINE ISSUE OF FACT EXISTS AS TO WHETHER THE CLAUSE IS CLEAR AND [UNAMBIGUOUS WHEN EVALUATED IN THE CONTEXT OF THE ENTIRE WRITTEN CONTRACT."
 {¶ 13} II. "THE TRIAL COURT ERRED BY FINDING THE CONTRACT TERMS, TAKEN AS A WHOLE, WERE NOT COMMERCIALLY UNREASONABLE."
 {¶ 14} III. "THE TRIAL COURT ERRED BY NOT FINDING THE UNPERFORMED CONTRACT TERMS, AND THE ABUNDANT CLAIMS OF GROSS NEGLIGENCE, MADE FOR A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER DEFENDANT IS GUILTY OF WILLFUL MISCONDUCT.
 {¶ 15} IV. "THE TRIAL COURT ERRED BY FAILING TO FIND THAT R.C. 2305.31
PROHIBITS INDEMNITY/EXCULPATORY AGREEMENTS IN CONSTRUCTION-RELATED CONTRACTS."
 {¶ 16} V. "THE TRIAL COURT ERRED WHEN IT RULED THAT ONCE AN INDIVIDUAL HOMEOWNER PARTICIPATES IN A RESIDENTIAL CONSTRUCTION CONTRACT AS HIS OWN GENERAL CONTRACTOR, SUCH ACTIVITY (BECOMING A `GENERAL CONTRACTOR) TAKES THE *Page 5 
RELATIONSHIP WITH HIS SUPPLIER(S) BEYOND THE OHIO CONSUMER SALES PRACTICES ACT (CSPA)."
 {¶ 17} Appellee's sole cross-assignment of error is as follows:
 {¶ 18} I. "THE COURT BELOW ERRED TO THE PREJUDICE OF APPELLEES/CROSS-APPELLANTS BY FAILING TO TRANSFER VENUE OF THIS MATTER TO THE WOOD COUNTY COURT OF COMMON PLEAS UNDER THE CIRCUMSTANCES OF THIS CASE."
 {¶ 19} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Civ. R. 56(C) provides:
 {¶ 20} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 21} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving *Page 6 
party. Ryberg v. Allstate Ins. Co. (July 12, 2001), 10th Dist. No. 00AP-1243, citing Tokles Son, Inc. v. Midwestern Indemnity Co. (1992),65 Ohio St.3d 621, 629.
 {¶ 22} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ. R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
 {¶ 23} Appellant argues in his first assignment of error that summary judgment should not have been granted in this case, because the exculpation clause that is contained within the written contract is ambiguous inasmuch as it fails to clearly release appellee from its own negligent performance under the contract.
 {¶ 24} At the outset, we consider appellee's claim that we should ignore this argument by appellant because it is raised for the first time on appeal. Although it is generally the case that reviewing courts should not consider arguments that were not raised in the courts below, this rule is not absolute. Belvedere Condominium Unit Owners' Assn. v.R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 279.
 {¶ 25} In the instant case, there is no question but that appellant raised in the trial court the general issue of enforceability of exculpatory language that was set forth in the contract. And, in doing so, appellant expressly challenged appellee's interpretation of *Page 7 
that language as relieving appellee from liability for its own negligence. As stated by appellant, appellee, by way of the exculpatory language in the contract, "merely attempts to limit responsibility for minor/incidental and consequential damages resulting from the successful completion of the work assigned."
 {¶ 26} The trial court, in addressing the issue of enforceability of the exculpatory language looked only to the language set forth under the heading "Structural damage" and, in so doing, made a finding that "the exculpatory clause language contained in the contract is not vague and ambiguous."
 {¶ 27} Under the circumstances of this case, where the issue of the potential ambiguity of the contract's exculpatory language was, at least, implied by appellant and was expressly dealt with by the trial court, we find that appellant's first assignment of error is properly considered in this appeal.
 {¶ 28} Turning our attention to the merits of appellant's first assignment of error, we note that, in general, attempts to excuse liability for negligence by contract are disfavored in the law.Collins v. Click Camera Video, Inc. (1993), 86 Ohio App.3d 826, 832;Orlett v. Suburban Propane (1989), 54 Ohio App.3d 127, 128. Nevertheless, absent important public policy concerns, unconscionability, or vague and ambiguous terms, limiting or exculpatory provisions will be upheld. Collins, supra, at 832.
 {¶ 29} "[E]xculpatory provisions in contracts are to be strictly construed so as not to relieve one from liability for his own negligence unless it is `expressed in clear and *Page 8 
unequivocal terms.'" Swartzentruber v. Wee-K Corp. (1997),117 Ohio App.3d 420, 424. In determining whether an exculpatory provision clearly and unequivocally releases a party from liability for negligence, "[t]he pivotal inquiry is whether it is clear from the general terms of the entire contract, considered in light of what an ordinary and prudent and knowledgeable party of the same class would understand, that the proprietor is to be relieved from liability for its own negligence." Id., at 425.
 {¶ 30} Applying the foregoing principles to the exculpatory provision at issue in the instant case, we find that the provision is insufficient, in light of the general terms of the entire contract, to inform an ordinary, prudent, and knowledgeable party of the same class as appellant that appellee was to be released from liability for its own negligence. Although the relevant contract provisions do indicate that even competent performance by appellee could result in damage to the property for which appellee would not be liable, they simply do not make clear that appellee was to be relieved from liability for its own negligent performance. Based on this elemental deficiency, we find the subject exculpatory clause to be unenforceable. See, Collins, supra. Appellant's first assignment of error is found well-taken. We further find that, because of our decision with regard to appellant's first assignment of error, appellant's second and fourth assignments of error are rendered moot.
 {¶ 31} Appellant argues in his third assignment of error that there is a genuine issue of material fact concerning whether appellee's conduct in this case amounted to *Page 9 
willful misconduct. The term "willful misconduct" is something more than negligence; it suggests "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury."Tighe v. Diamond (1948), 149 Ohio St. 520, 527; Brockman v. Bell (1992),78 Ohio App.3d 508, 515.
 {¶ 32} Appellant argues in the instant case that evidence demonstrating that appellee failed to replace soil against the exposed foundation; failed to fill the helical pilings with grout mixture per the contract; and failed to remove gravel off of the footers before attempting to raise the foundation is sufficient to establish his claim for willful misconduct. We disagree. Without more, evidence of the above-mentioned failures establishes nothing more than negligence, if that. It certainly does not establish intentional misconduct on the part of appellee. See Tighe, supra. For the foregoing reasons, appellant's third assignment of error is found not well-taken.
 {¶ 33} Appellant argues in his fifth assignment of error that the trial court erred when it ruled that appellant is not a "consumer" within the meaning of the Ohio Consumer Sales Practices Act ("CSPA") and that, as a result, the Ohio Consumer Sales Practices Act does not apply to this case. A violation of the CSPA is premised upon the existence of a "supplier", a "consumer", and a "consumer transaction," all of which are defined under the act. See R.C. 1345.02 and 1345.03. *Page 10 
 {¶ 34} "Consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A).
 {¶ 35} "Supplier" is defined as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer." R.C. 1345.01(C).
 {¶ 36} Finally, "consumer" is defined as "a person who engages in a consumer transaction with a supplier."
 {¶ 37} In the instant case, the dispute between the parties concerns only whether appellant is a "consumer" within the meaning of the CSPA. Appellant argues that he was a consumer as defined by the act. Arguing to the contrary — and in conformity with the findings of the trial court — appellee states, first, that appellant assumed the role of "general contractor" in his transaction with appellee and, second, that, as a general contractor, appellant could no longer be considered a "consumer" for purposes of raising a claim under the CSPA. This proposition is wholly unsupported by the law.
 {¶ 38} To the contrary, R.C. Chapter 1345 was specifically found to apply to a dispute, similar to the one at hand, which involved homeowners and a sole proprietor of a construction company who performed improvements to the homeowners' property. See, Williams v. Edwards
(1998), 129 Ohio App.3d 116, 120-123; see also, Hanna v. Groom, *Page 11 
10th Dist. No. 07AP-502, 2008-Ohio-765. Like the homeowners inWilliams v. Edwards, supra, appellant is clearly a consumer within the meaning of the act. The gratuitous, and factually questionable, labeling of appellant as a general contractor does nothing to alter our analysis or this conclusion.
 {¶ 39} Because appellant was a consumer within the meaning of the act who engaged in a consumer transaction with appellee, who was a supplier within the meaning of the act, the CSPA fully applies to the instant matter. We therefore conclude that the trial court erred as a matter of law in dismissing appellant's CSPA claim. Appellant's fifth assignment of error is found well-taken.
 {¶ 40} Finally, we consider appellee's cross-assignment of error, wherein it is argued that the trial court erred in not transferring venue in this matter to Wood County.
 {¶ 41} Venue is proper where a plaintiff chooses a court located in any county described in the first nine provisions of Civ. R. 3(B). These provisions have equal status, and any court specified therein may be a proper and initial place of venue. Morrison v. Steiner (1972),32 Ohio St.2d 86, 89; Glover v. Glover (1990), 66 Ohio App.3d 724, 728.
 {¶ 42} Civ. R. 3(B)(7) relevantly provides that proper venue lies "[i]n actions described in Civ. R. 4.3, in the county where plaintiff resides." Civ. R. 4.3, which deals with out-of-state service of process, relevantly provides:
 {¶ 43} "(A) When service permitted *Page 12 
 {¶ 44} "Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. `Person' includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:
 {¶ 45} "(2) Contracting to supply services or goods in this state[.]"
 {¶ 46} The instant action was filed in Lucas County, where appellant resides. Appellee is a foreign corporation, incorporated in the state of Michigan. The claims that are the subject of appellant's complaint arose out of appellee's contract with appellant to supply services to appellant in this state.
 {¶ 47} Appellant's action is clearly one described in Civ. R. 4.3. We therefore find that, pursuant to Civ. R. 3(B)(7), proper venue lies in Lucas County, where appellant resides.
 {¶ 48} In an effort to avoid this conclusion, appellee points out that in this case, appellant had previously filed his action in Wood County and then, following several orders that "appellant would consider to be adverse," went on to dismiss the matter, only to refile the instant action in Lucas County. Such actions were neither unlawful or *Page 13 
otherwise improper. Accordingly, appellee's cross-assignment of error is found not well-taken.
 {¶ 49} For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is reversed in part, and the matter is remanded for further proceedings consistent with this decision and judgment entry. Appellees/cross-appellants are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED, IN PART
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Arlene Singer, J., William J. Skow, J., CONCUR.
[1] The relationship between appellees/cross-appellants is one of Elliott Leveling, Inc. doing business as A-1 Concrete Leveling, Inc. *Page 1